**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>COMPUTER SCIENCES CORPORATION, MICHAEL W. LAPHEN and MICHAEL J. MANCUSO, )<br><br>Defendants ) | Civ. A. No. 1:11-cv-610-TSE-IDD |

*(Additional captions on following page)*

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION OF ONTARIO TEACHERS' PENSION PLAN BOARD FOR**
**CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT**
**AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

ARTHUR I. MURPHY, JR., Individually and )
On Behalf of All Others Similarly Situated, )
)
)
               Plaintiff, )     Civ. A. No. 1:11-cv-636-TSE-IDD
    vs. )
)
COMPUTER SCIENCES CORPORATION, )
MICHAEL W. LAPHEN and MICHAEL J. )
MANCUSO, )
)
            Defendants )
)

HILARY KRAMER, On Behalf of Herself and )
All Others Similarly Situated, )
)
)
               Plaintiff, )     Civ. A. No. 1:11-cv-751-TSE-IDD
    vs. )
)
COMPUTER SCIENCES CORPORATION, )
MICHAEL W. LAPHEN, MICHAEL J. )
MANCUSO, and DONALD G. DeBUCK, )
)
            Defendants )
)

NORTON GOLDMAN, Individually and On )
Behalf of All Others Similarly Situated, )
)
)
               Plaintiff, )     Civ. A. No. 1:11-cv-777-TSE-IDD
    vs. )
)
COMPUTER SCIENCES CORPORATION, )
MICHAEL W. LAPHEN, MICHAEL J. )
MANCUSO, and DONALD G. DeBUCK, )
)
            Defendants )
)

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED .................................. 5

II.     ONTARIO TEACHERS' SHOULD
        BE APPOINTED LEAD PLAINTIFF.......................................................................... 6

        A.      The PSLRA Standard for Appointing Lead Plaintiff ........................................ 6

        B.      Ontario Teachers' Is the "Most Adequate Plaintiff" ........................................ 7

                1.      Ontario Teachers' Has Satisfied the
                        PSLRA's Procedural Requirements ......................................................... 7

                2.      Ontario Teachers' Has the Largest Financial
                        Interest in the Relief Sought by the Class .................................................. 7

                3.      Ontario Teachers' Satisfies Rule 23's
                        Typicality and Adequacy Requirements ................................................... 9

                        (a)   The Claims of Ontario Teachers'
                              Are Typical of Those of the Class ..................................................... 9

                        (b)   Ontario Teachers' Will Fairly and Adequately
                              Represent the Interests of the Class ................................................ 10

III.    ONTARIO TEACHERS' IS PRECISELY THE TYPE
        OF LEAD PLAINTIFF ENVISIONED BY THE PSLRA........................................ 12

IV.     THE COURT SHOULD APPROVE
        ONTARIO TEACHERS' CHOICE OF COUNSEL .................................................. 14

CONCLUSION....................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### FEDERAL CASES

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).........................................................................................8, 12, 14

*In re Cree, Inc., Sec. Litig.*,
    219 F.R.D. 369 (M.D.N.C. 2003) .......................................................................................11

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ...........................................................................................8

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)................................................................................................5

*Klugmann v. Am. Capital Ltd.*,
    No. 09-cv-05, 2009 WL 2499521 (D. Md. Aug. 13, 2009)..............................................10, 14

*Lienhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001) ...............................................................................................9

*In re Microstrategy Inc. Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ........................................................................ *passim*

*In re Mills Corp. Sec. Litig.*,
    No. Civ. A. 1:06-77(GBL), 2006 WL 2035391 (E.D. Va. May 30, 2006).........................8, 11

*Morrison v. Nat'l Australia Bank Ltd.*,
    130 S. Ct. 2869 (2010).....................................................................................................2, 10

### DOCKETED CASES

*In re Am. Int'l Group, Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.)..................................................................................................14

*In re Biovail Corp. Sec. Litig.*,
    No. 03-cv-8917 (S.D.N.Y.)..................................................................................................13

*In re Broadcom Corp. Class Action Litig.*,
    No. 06-cv-5036 (C.D. Cal.) .................................................................................................14

*In re Countrywide Fin. Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal.) .................................................................................................14

*In re HealthSouth Corp. Sec. Litig.*,
   No. 03-cv-1501-S (N.D. Ala.) ...................................................................................14

*In re Monster Worldwide, Inc. Sec. Litig.*,
   No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007).........................15

*In re Nortel Networks Corp. Sec. Litig.*,
   No. 05-md-1659 (S.D.N.Y.) .....................................................................................13

*In re Williams Cos., Inc. Sec. Litig.*,
   No. 02-cv-72 (N.D. Okla.) ........................................................................................13

## FEDERAL STATUTES

15 U.S.C. § 78j(b) ..................................................................................................................3

15 U.S.C. § 78t(a) ..................................................................................................................3

17 C.F.R. § 240.10b-5 ............................................................................................................3

15 U.S.C. § 78u-(4) *et seq.*.......................................................................................... *passim*

Fed. R. Civ. P. 23(a) ..............................................................................................................9

Fed. R. Civ. P. 42(a) ..............................................................................................................5

## MISCELLANEOUS

1-14A *Moore's Manual – Federal Practice and Procedure* § 14A.25  .................................. 10-11

H.R. Rep. No. 104-369 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 730 .......................................................................2

Randal Thomas, *Public Pension Funds as Shareholder Activists*,
   61 Vanderbilt L. Rev. En Banc 1 (2008) ..............................................................13

S. Rep. No. 104-98 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 679 .......................................................................2

Ontario Teachers' Pension Plan Board ("Ontario Teachers'") respectfully submits this Memorandum of Law in support of its Motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (1) consolidating the above-captioned related actions (the "Action"); (2) appointing Ontario Teachers' as Lead Plaintiff for a class of purchasers (the "Class") of Computer Sciences Corporation ("CSC" or the "Company") common stock between May 21, 2009 and May 25, 2011, inclusive (the "Class Period");[1] and (3) approving Ontario Teachers' selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Patton Boggs LLP ("Patton Boggs") as Local Counsel for the Class.

## PRELIMINARY STATEMENT

Ontario Teachers'—an institutional investor with approximately $110 billion in assets under management as of December 31, 2010, and a long history of advocacy for shareholder rights—respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers of CSC common stock during the Class Period.  Ontario Teachers' satisfies all of the prerequisites for lead plaintiff appointment that the Court set out in *In re Microstrategy Inc. Securities Litigation*, 110 F. Supp. 2d 427, 432 (E.D. Va. 2000).  As set forth in detail below, Ontario Teachers' suffered losses of $7,060,696, as calculated under widely accepted last-in-first-out ("LIFO") loss calculation methodology.[2]  Furthermore, Ontario Teachers' retained nearly all—

---

[1]  The complaints filed against CSC assert different class periods.  After it is appointed, the Lead Plaintiff will reconcile the different class periods upon filing a consolidated complaint.  For purposes of this Motion, Ontario Teachers' adopts the longest class period involved in these actions.

[2]  A copy of the PSLRA-required Certification submitted by Ontario Teachers' is attached as Exhibit A to the Declaration of Benjamin G. Chew (the "Chew Declaration"), submitted

*(continued ... )*

92.8 percent—of the shares of CSC common stock it purchased during the Class Period at the close of the Class Period.  Accordingly, Ontario Teachers' has a powerful economic interest in directing the litigation and recovering through this litigation on behalf of its fund beneficiaries— an interest believed to be greater than that of any competing movant.

Ontario Teachers' also meets the adequacy and typicality requirements set out under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  Like the other members of the putative Class, Ontario Teachers' seeks recovery of losses incurred as a result of declines in the share price of CSC stock registered on the New York Stock Exchange (the "NYSE") in the United States.  *See Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2886 (2010) (holding that Section 10(b) applies to securities registered on a U.S. stock exchange, irrespective of the nationality of the shareholder).  Moreover, as a sophisticated institutional investor, and as the Court noted in *Microstrategy*, Ontario Teachers' is precisely the kind of lead plaintiff that the PSLRA sought to encourage.[3]

Ontario Teachers' also respectfully requests that the Court approve its choice of counsel. Ontario Teachers' choice for Lead Counsel, Labaton Sucharow, is a nationally-recognized securities class action firm that has recovered billions of dollars in damages for injured shareholders.  Ontario Teachers' choice for Local Counsel, Patton Boggs, is a respected national firm with more than forty years of experience in client advocacy.  These firms are eminently

---

*( ... continued)*

herewith.  This Certification sets forth all transactions of the Ontario Teachers' in CSC common stock during the Class Period.  In addition, a chart reflecting the calculation of the financial losses of Ontario Teachers' on CSC common stock purchased during the Class Period is attached as Exhibit B to the Chew Declaration.

[3]  *See* 110 F. Supp. 2d at 435 n.14 (noting importance of sophisticated investors with "serious and legitimate interest[s]"in the prosecution of securities class actions); *see also* S. Rep. No. 104-98, at 10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 and H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (noting that the PSLRA was designed "to increase the likelihood that institutional investors will serve as lead plaintiff[]").

qualified to prosecute this case and have extensive experience in class actions and securities litigation.

## FACTUAL BACKGROUND

Pending before the Court are four complaints that were filed against: (1) CSC, an information technology ("IT") company based in Falls Church, Virginia that provides outsourcing services to commercial and government customers around the world;[4] (2) Michael W. Laphen (President, Chief Executive Officer, and Chairman of the Board of Directors); (3) Michael J. Mancuso (Vice President and Chief Financial Officer); and (4) Donald G. Debuck (Principal Accounting Officer, Vice President, and Controller) (collectively, "Defendants").  The complaints allege violations of Sections 10(b) and 20(a) of the Exchange Act[5] and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5") promulgated thereunder.[6]

Founded in 1959, CSC is one of the oldest and largest IT service providers in the world. The Company provides outsourcing services to commercial and government customers worldwide.  For example, in December 2003, CSC entered into a ten-year, $1.7 billion agreement with United Kingdom's National Health Services (the "NHS") to deliver an integrated electronic patient records system (the "NHS Contract").  The Company's Managed Services Sector ("MSS") segment, which generates approximately 40 percent of CSC's total revenue, provides large-scale outsourcing solutions to private customers.

---

[4]  CSC is a Nevada corporation.  The Company's stock is listed on the NYSE and trades under the ticker symbol "CSC."

[5]  *See* 15 U.S.C. §§ 78j(b) and 78t(a).

[6]  *See* 17 C.F.R. § 240.10b-5.

The Company is alleged to have deceived investors in two ways.  First, it systematically manipulated its accounting for expenses in its MSS segment in an effort to artificially bolster its earnings.  Second, it misled the market about the status of its NHS contract.

The Company first began to reveal these improprieties on November 10, 2010, when CSC disclosed what it described as "localized" accounting deficiencies requiring a charge of $30 million in the fiscal second quarter of 2011 and $40 million for the first six months of fiscal 2011.  At the same time, the Company revealed that it was in the midst of renegotiating the key NHS contract, but assured investors that the issue was days away from resolution.

Only three months later, CSC announced that the SEC had initiated a formal investigation into its accounting improprieties, and that the Company would accrue additional charges of $23 million in the fiscal third quarter of 2011 and $81 million through the first nine months of fiscal 2011, due to accounting errors.  CSC further revealed that negotiations with the NHS had apparently broken down and that the NHS was considering termination of the NHS Contract.  As a result of these revelations, CSC's stock fell 14.3 percent on February 9, 2011.

Then, on May 2, 2011, CSC published a press release containing lower fiscal 2011 earnings guidance and lower fiscal 2011 sales projections.  At the same time, the Company announced that it was concluding negotiations with the NHS.  As a result of these disclosures, CSC's stock price fell 12.9 percent on May 3, 2011.

The Company's stock sank even further when, on May 25, 2011, the Company disclosed that it would incur another charge in connection with faulty accounting and that the Audit Committee of CSC's board of directors had undertaken an independent investigation of the Company's accounting practices.  On this news, analysts became concerned that CSC's accounting deficiencies were more widespread than had been previously disclosed, and the Company's stock fell 12.9 percent.

The Company's misconduct and the revelations thereof have caused CSC's stockholders to incur hundreds of millions of dollars in losses.

## ARGUMENT

## I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Four related securities class actions have been filed in this Court against the Defendants. Under the PSLRA's "sequential roadmap" for securities class actions, consolidation is a "threshold issue." *Microstrategy*, 110 F. Supp. 2d at 430.  The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," a court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  The Court has broad discretion under Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)") to consolidate cases.  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  Under Rule 42(a), consolidation is appropriate when the actions involve common questions of law or fact.  Fed. R. Civ. P. 42(a); *see also Microstrategy*, 110 F. Supp. 2d at 431 ("consolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports.") (quotation and citation omitted).  Minor differences in legal issues, parties, and the facts alleged do not defeat consolidation "where the essential claims and factual allegations are similar." *Id.*

Here, the related actions are ideally suited for consolidation pursuant to Rule 42(a) because their unification will expedite pretrial proceedings, reduce case duplication, and minimize the expenditure of time and money for all concerned parties.  These actions present substantially similar factual and legal issues, arise from the same alleged scheme by Defendants, and allege violations of the Exchange Act.  Because these actions are based on the same facts

and involve the same subject matter, discovery obtained in this lawsuit will undoubtedly be relevant to all other actions.  Accordingly, consolidation of the above-captioned actions is appropriate under Rule 42(a) and the PSLRA.

## II.    ONTARIO TEACHERS' SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).  Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

> **B.**    **Ontario Teachers' Is the "Most Adequate Plaintiff"**

Ontario Teachers' respectfully submits that it is the presumptively "most adequate plaintiff."   It has complied with PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.

> **1.**    **Ontario Teachers' Has Satisfied the**
> **PSLRA's Procedural Requirements**

Ontario Teachers' filed this motion to serve as lead plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national, business-oriented news wire service, on June 3, 2011.  *See* Notice, Chew Decl. Ex. C. Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before August 2, 2011.  Ontario Teachers' filed its motion within the required period.

> **2.**    **Ontario Teachers' Has the Largest**
> **Financial Interest in the Relief Sought by the Class**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief

sought by the class, so long as that movant also meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The determination of largest financial interest is the most significant inquiry of the lead plaintiff appointment process as it requires the Court to assess which movant has the largest financial stake in the action. *Microstrategy*, 110 F. Supp. 2d at 433-34. This factor is "exclusive" because only one movant can have the largest financial stake in the outcome of the litigation. *Id.* at 433 n.11.

The Court is charged with determining "how best to approximate a [movant]'s stake in the litigation based on that [movant]'s purchases or sales of the relevant security." *Id.* at 434. In the Fourth Circuit, courts consider total losses as well as net shares purchased in determining which movant has the largest financial interest in an action. *See, e.g., In re Mills Corp. Sec. Litig.*, No. Civ. A. 1:06-77(GBL), 2006 WL 2035391, *2-3 (E.D. Va. May 30, 2006) (considering losses together with net shares purchased in determining the movant with the largest financial interest); *accord In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (examining, *inter alia*, "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs").

Ontario Teachers' suffered substantial losses of approximately $7,060,696 calculated under the LIFO method of accounting for purchases and sales.[7] Ontario Teachers' also spent $39.7 million on a net basis purchasing 935,300 shares of CSC common stock during the Class Period, and retained 92.8 percent of these shares, or 868,600 shares of CSC stock, at the end of

---

[7] The losses of Ontario Teachers' are $7,341,189 under the first-in-first-out ("FIFO") loss calculation methodology. However, courts generally do not prefer FIFO. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) ("The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO . . . ignores sales occurring during the class period and hence may exaggerate losses.").

the Class Period.  *See* Loss Analysis, Chew Decl. Ex. B.  These large net expenditure and net

share figures highlight the strong financial interest of Ontario Teachers' in this litigation.

Ontario Teachers' is presently unaware of any other movant with a larger financial interest in the

outcome of the Action.

### 3.   Ontario Teachers' Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the

lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ."  15 U.S.C. § 78u-

(4)(a)(3)(B)(iii)(I)(cc).  With respect to class certification, Rule 23(a) requires that: (1) the class

is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) such claims are typical of those of the class; and (4) the representative

will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  However, only

the typicality and adequacy requirements of Rule 23 need to be met at the lead plaintiff stage.

*See Microstrategy*, 110 F. Supp. 2d at 435.

### (a)   The Claims of Ontario Teachers' Are Typical of Those of the Class

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of

those of the class.  A movant's claims satisfy the typicality requirement when the movant is "part

of the class and possess[es] the same interest and suffer[s] the same injury as the class

members."  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001) (quotation and

citation omitted); *see also Microstrategy*, 110 F. Supp. 2d at 435 ("A person's claim is typical

when each class member's claim arises from the same course of events, and each class member

makes similar legal arguments to prove the defendant's liability.") (quotations and citation

omitted).

The typicality requirement is satisfied here because Ontario Teachers', which is not subject to any unique or special defenses, seeks the same relief and advances the same legal theories as other Class members.  Like all members of the Class, Ontario Teachers': (1) purchased or acquired CSC securities during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; and (3) suffered damages as a result. *See Klugmann v. Am. Capital Ltd.*, No. 09-cv-05, 2009 WL 2499521, at *5 (D. Md. Aug. 13, 2009) (discussing the typicality requirement).  Moreover, because Ontario Teachers' purchased shares of CSC that are registered on the NYSE, it is precisely the type of claimant endorsed by the U.S. Supreme Court in *Morrison*.  In *Morrison*, the Supreme Court emphasized that it is not the nationality of an investor that determines whether it has a claim under U.S. securities laws, but rather whether that investor's claims arise from shares registered and listed on a U.S. exchange.  130 S. Ct. at 2884.

Because the claims of Ontario Teachers' are based on the same legal theory and arise from the same events and course of conduct as the claims of the putative Class, it satisfies Rule 23(a)(3)'s typicality requirement.

### (b)   Ontario Teachers' Will Fairly and Adequately Represent the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that: (1) its interests are not adverse to the interests of the class; (2) it has retained competent counsel; and (3) it is otherwise competent to serve as a representative of the class.  *Microstrategy*, 110 F. Supp. 2d at 436.  To ensure that the rights of absent class members are protected, a representative party must show "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and "must not have interests antagonistic to those of the proposed class."  1-14A *Moore's Manual – Federal Practice and Procedure*

10

§ 14A.25 [1].  The adequacy requirement also applies to a movant's choice of class counsel, whose representation is adequate when class counsel is qualified, experienced, and generally able to conduct the litigation.  *Id.*

Ontario Teachers' will fairly and adequately represent the interests of the proposed Class. No antagonism exists between the interests of Ontario Teachers' and those of the absent Class members; rather, the interests of Ontario Teachers' and the Class members are squarely aligned. In addition, Ontario Teachers' has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). Ontario Teachers' choice for Proposed Lead Counsel, Labaton Sucharow, has already initiated an extensive investigation into CSC and its accounting improprieties, including efforts to identify potential witnesses with knowledge of CSC's accounting practices.  Courts recognize the investigative work conducted by the counsel the lead plaintiff movant has chosen.  *See, e.g.*, *In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 373 (M.D.N.C. 2003) ("[t]he court is also guided . . . by the provisions of . . . Rule 23(g) . . . providing that in appointing class counsel the court must consider the work counsel has done in identifying or investigating potential claims in the actions"); *Mills*, 2006 WL 2035391, at *3 (citing lead counsel's efforts to identify and investigate potential claims in the action).

Just like the other members of the Class, due to Defendants' alleged fraud, Ontario Teachers' has suffered substantial losses on its purchases of CSC stock that was registered and listed on the NYSE.  Accordingly, it has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action, and satisfies Rule 23's adequacy requirement.

### III.   ONTARIO TEACHERS' IS PRECISELY THE TYPE OF LEAD PLAINTIFF ENVISIONED BY THE PSLRA

In addition to satisfying the requirements of Rule 23, Ontario Teachers'—a large, sophisticated institutional investor—is the type of investor Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions.  Congress noted in the PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  *Cendant*, 264 F.3d at 244, 264 (quoting S. Rep. No. 104-98, at 10, *reprinted in* 1995 U.S.C.C.A.N. at 690 and H.R. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733).

Originally established in 1917, Ontario Teachers' is the largest single-profession pension plan in Canada and one of Canada's largest institutional investors.  Ontario Teachers' oversees and manages the retirement income needs of more than 178,000 teachers in elementary and secondary schools in Ontario, 117,000 pensioners, and 68,000 inactive members, and had approximately $110 billion in assets under management as of December 31, 2010.

Ontario Teachers' is a paradigmatic example of an institutional investor incentivized by a large financial stake in a litigation to direct and supervise counsel in the prosecution of an action.  *See Microstrategy*, 110 F. Supp. 2d at 435 n.14 (discussing the PSLRA's purpose of ensuring that the prosecution of securities class actions be coordinated by investors with substantial interests in the outcome of the action).  Ontario Teachers' is a sophisticated institutional investor with sufficient resources to adequately litigate the Action and supervise Class counsel.  Ontario Teachers' also has substantial experience overseeing the prosecution of complex securities class

action lawsuits as a lead plaintiff.  As Co-Lead Plaintiff in *In re Nortel Networks Corp.*

*Securities Litigation*, No. 05-md-1659 (S.D.N.Y.), Ontario Teachers' secured a $1.07 billion

settlement that included extensive corporate governance reforms on behalf of investors.  Ontario

Teachers' also served as Co-Lead Plaintiff in *In re Williams Cos., Inc. Securities Litigation*, No.

02-cv-72 (N.D. Okla.), which resulted in a recovery of $311 million for the class.  Ontario

Teachers' served as Lead Plaintiff in *In re Biovail Corp. Securities Litigation*, No. 03-cv-8917

(S.D.N.Y.), which resulted in a recovery of $138 million for the Class.  The active involvement

of Ontario Teachers' in prosecuting securities fraud cases reflects its commitment to redressing

instances of wrongdoing in the U.S. securities markets.  Ontario Teachers' is known worldwide

as an active and involved shareholder, and has been instrumental in working with its peers in

achieving not only significant and meaningful results for class members in securities fraud

litigation, but also in the general area of improving corporate governance through proxy voting,

board involvement, and lobbying for greater enforcement of securities regulations.  When

appropriate and feasible Ontario Teachers' has consistently sought to improve corporate

governance as part of settlement negotiations of securities fraud cases it has prosecuted.  Its

lengthy track record of shareholder activism also gives it the ability to effectively oversee the

litigation of the Action.[8]

Ontario Teachers' understands the fiduciary duties of a lead plaintiff, is willing to oversee

the vigorous prosecution of the Action, and has pledged to "provid[e] testimony at deposition

and trial, if necessary."  *See* Certification, Chew Decl. Ex. A.  Thus, as demonstrated herein,

Ontario Teachers' is the quintessential lead plaintiff contemplated under the PSLRA.

---

[8] *See e.g.* Randal Thomas, *Public Pension Funds as Shareholder Activists*, 61 Vanderbilt L. Rev. En Banc 1, 8 (2008) (citing Ontario Teachers' for its "shareholder activism").

IV.    **THE COURT SHOULD APPROVE**
       <u>**ONTARIO TEACHERS' CHOICE OF COUNSEL**</u>

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the

class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Klugmann*,

2009 WL 2499521, at *2 ("'[u]nder PSLRA, the 'empowered' lead plaintiff 'has the right to

select and retain class counsel, subject to [the Court's] approval'") (quoting Barbara J. Rothstein

& Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket

Guide for Judges*, at 8 (2d ed. 2009)). "[T]he court should generally employ a deferential

standard in reviewing the lead plaintiff's choices." *Cendant*, 264 F.3d at 274. Ontario Teachers'

selected Labaton Sucharow, highly-qualified counsel, to serve as Lead Counsel and Patton

Boggs to serve as Local Counsel.

Labaton Sucharow, Ontario Teachers' selection for Lead Counsel, has excelled as lead

counsel in numerous important actions on behalf of defrauded investors. Labaton Sucharow is

lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141

(S.D.N.Y.), in which it recently achieved settlements-in-principle totaling approximately

$1 billion. In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp.

Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which resulted in a settlement of

$624 million—the largest securities fraud settlement arising from the financial crisis of 2007 to

2008. Labaton Sucharow also serves as lead counsel in *In re Broadcom Corp. Class Action

Litigation*, No. 06-cv-5036 (C.D. Cal.), the largest accounting restatement arising from options

backdating in history. Labaton Sucharow achieved a cash settlement of $160.5 million for the

class, at the time, the second-largest cash settlement in an options backdating case. Labaton

Sucharow also served as co-lead counsel in *In re HealthSouth Corp. Securities Litigation*,

No. 03-cv-1501-S (N.D. Ala.), the largest securities fraud arising out of the healthcare industry,

which resulted in a total settlement amount of $804.5 million for the class.  Labaton Sucharow is currently serving as the court-appointed lead or co-lead counsel in the securities fraud cases against The Bear Stearns Cos., Inc., Federal National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and Goldman Sachs Group, Inc., among other significant investor litigations.  In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation."  *See also* Labaton Sucharow Firm Resume, Chew Decl. Ex. D.

Patton Boggs, Ontario Teachers' selection for Local Counsel, is a respected national firm with more than forty years of experience in client advocacy.  *See* Patton Boggs Firm Resume, Chew Decl. Ex. E.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Ontario Teachers' respectfully requests that the Court: (1) consolidate the above-captioned, related cases; (2) appoint Ontario Teachers' as Lead Plaintiff; and (3) approve Ontario Teachers' selection of Labaton Sucharow as Lead Counsel and Patton Boggs as Local Counsel.

Dated:  August 2, 2011

Respectfully submitted,

 _/s/ Benjamin G. Chew_

Benjamin G. Chew (VSB#29113)
**PATTON BOGGS LLP**
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6015
Facsimile: (202) 457-6315
Email: bchew@pattonboggs.com

*Counsel for Ontario Teachers' and
Proposed Local Counsel for the Class*


Christopher J. Keller *(pro hac vice pending)*
Joseph A. Fonti *(pro hac vice pending)*
Javier Bleichmar *(pro hac vice pending)*
Dominic J. Auld *(pro hac vice pending)*
Kevin L. Oberdorfer *(pro hac vice pending)*
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: ckeller@labaton.com
jfonti@labaton.com
jbleichmar@labaton.com
dauld@labaton.com
koberdorfer@labaton.com

*Counsel for Ontario Teachers' and
Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2d day of August 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Craig Crandall Reilly
Law Office of Craig C. Reilly
111 Oronoco St
Alexandria, VA 22314
craig.reilly@ccreillylaw.com

*Counsel for Plaintiffs City of Roseville Employee's Retirement System* (Case No. 1:11-cv-00610)*, Arthur I. Murphy* (Case No. 1:11-cv-00636)*, and Norton Goldman* (Case No. 1:11-cv-00777)

David Emmett Carney
Skadden Arps Slate Meagher & Flom LLP
1440 New York Ave NW
Washington, DC 20005-2111
david.carney@skadden.com

*Counsel for Defendants*

Elizabeth Kathleen Tripodi
Finkelstein Thompson LLP
1050 30th St NW
Washington, DC 20007
etripodi@finkelsteinthompson.com

*Counsel for Plaintiff Hilary Kramer*
(Case No. 1:11-cv-00751)

 /s/ Benjamin G. Chew
Benjamin G. Chew (VSB#29113)
**PATTON BOGGS LLP**
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6015
Facsimile: (202) 457-6315
Email: bchew@pattonboggs.com

*Counsel for Ontario Teachers' and Proposed Local Counsel for the Class*