UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | | |
|---|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COMPUTER SCIENCES CORPORATION, MICHAEL W. LAPHEN and MICHAEL J. MANCUSO,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:11-cv-00610-TSE-IDD<br><br>CLASS ACTION |

[Caption continued on following page.]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF CONSTRUCTION LABORERS PENSION TRUST OF GREATER ST. LOUIS'S
MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF COUNSEL**

ARTHUR I. MURPHY, JR., Individually and
on Behalf of All Others Similarly Situated,

                Plaintiff,

      vs.

COMPUTER SCIENCES CORPORATION,
MICHAEL W. LAPHEN and MICHAEL J.
MANCUSO,

              Defendants.

Civil Acton No. 1:11-cv-00636-TSE-IDD

<u>CLASS ACTION</u>

---

HILLARY KRAMER, on Behalf of Herself
and All Others Similarly Situated,

                Plaintiff,

      vs.

COMPUTER SCIENCES CORPORATION,
MICHAEL W. LAPHEN, MICHAEL J.
MANCUSO and DONALD G. DEBUCK,

              Defendants.

Civil Action No. 1:11-cv-00751-TSE-IDD

<u>CLASS ACTION</u>

---

NORTON GOLDMAN, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

      vs.

COMPUTER SCIENCES CORPORATION,
MICHAEL W. LAPHEN, MICHAEL J.
MANCUSO and DONALD G. DeBUCK,

              Defendants.

Civil Action No. 1:11-cv-00777-TSE-IDD

<u>CLASS ACTION</u>

## I.      STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

Presently pending before this Court are four securities class action lawsuits (the "Actions")
brought on behalf of purchasers of the common stock of Computer Sciences Corp. ("Computer
Sciences" or the "Company") between May 21, 2009 and May 25, 2011, inclusive (the "Class
Period"), which allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934
(the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995
("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R.
§240.10b-5).

Proposed lead plaintiff Construction Laborers Pension Trust of Greater St. Louis (the
"Pension Trust") hereby moves this Court for an Order:  (i) consolidating the related Actions
pursuant to Federal Rules of Civil Procedure 42(a); (ii) appointing it as Lead Plaintiff in the Actions
pursuant to the PSLRA; and (iii) approving its selection of the law firms of Robbins Geller Rudman
& Dowd LLP ("Robbins Geller") and Law Offices of Craig C. Reilly ("Reilly") as Lead and Liaison
Counsel.

This motion is made on the grounds that the Actions pending before this Court involve
common questions of law and fact, rendering consolidation appropriate.  Further, the Pension Trust
is the most adequate plaintiff as defined by the PSLRA because it possesses a significant financial
interest in these Actions, *see* Reilly Decl., Ex. B,[1] and it otherwise satisfies the requirements of
Federal Rule of Civil Procedure 23 in that its claims are typical of the claims of the putative class
and that it will fairly and adequately represent the interests of the class.

---

[1]      References to the "Reilly Decl., Ex. ___ " are to the exhibits attached to the accompanying
Declaration of Craig C. Reilly in Support of Motion of Construction Laborers Pension Trust of
Greater St. Louis for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of
Counsel, dated August 2, 2011, and submitted herewith.

Accordingly, the Pension Trust should be appointed Lead Plaintiff, and its selection of Lead and Liaison Counsel should be approved.

## II.   STATEMENT OF FACTS

Computer Sciences is a leader in the information technology ("IT") and professional services industry, offering an array of services to clients in the commercial and government markets and specializing in the application of complex IT implementation and strategic objectives.   The Company delivers these services in three service lines or sectors: North American Public Sector ("NPS"), Managed Services Sector ("MSS"), and Business Solutions & Services ("BSS").

The complaint alleges that various Class Period representations by defendants concerning the financial condition and prospects for Computer Sciences were each materially false and misleading when made because they failed to disclose the true facts, which were then known to or recklessly disregarded by defendants, including:  (a) the Company's historical and current financial results from its MSS, which had been incorporated into the Company's consolidated financial statements, were false and in violation of the Company's internal accounting policies and Generally Accepted Accounting Principles; (b) the implementation of the Company's Lorenzo 1.9 software at the United Kingdom's National Health Service ("NHS") was experiencing severe technical difficulties, rendering the Company unable to meet its customer contract milestones such that the entirety of the contract was at risk of termination; and (c) the Company was experiencing significant weakness in demand for its products and services, and bookings for new business for its products were declining. Consequently, there was no reasonable basis for the fiscal 2011 revenue, earnings, bookings and margin forecasts made to the public during the Class Period.  As a result of defendants' false statements, however, Computer Sciences stock traded at artificially inflated prices, reaching a high of $56.54 per share during the Class Period.

On February 1, 2011, Computer Sciences issued a press release announcing that the SEC had initiated a formal investigation into accounting irregularities at the Company. On February 9, 2011, the Company announced its third quarter 2011 financial results, which missed analysts consensus revenue expectations, and reduced fiscal 2011 bookings estimates by $2.5 billion. The Company also announced that it would cut fiscal 2011 revenue guidance by $300 million, that the impact of the accounting irregularities in its Nordic region were worse than previously disclosed, and that the Company had missed a delivery milestone with NHS. On this news, Computer Science's stock price declined more than $8.00 per share.

On May 2, 2011, the Company announced its fourth quarter 2011 financial results and reported that it was close to an agreement with the NHS on a revised contract and updated its fiscal 2011 guidance, announcing that it would miss its reduced fiscal 2011 revenue expectations by $100 million and earnings expectations by $0.45 per share. Then, on May 25, 2011, after the market closed, the Company issued a press release pre-announcing its fourth quarter and fiscal 2011 financial results.

Among other things, the Company reported fourth quarter 2011 earnings results of $1.09 per share, which missed Wall Street consensus estimates of $1.16, and that fiscal 2011 earnings would be below the Company's recent reduced forecast of $4.75 per share. In addition, the Company also disclosed that its Audit Committee had begun an internal investigation into accounting irregularities in one of its service sectors. In response to the Company's May 25, 2011 disclosures, on May 26, 2011, the Company's stock price fell $5.71 per share (or 12%) to close at $38.38 per share.

On June 15, 2011, the Company filed its Form 10-K for the year ending April 1, 2011. The Company reported that it had made "out of period adjustments" in fiscal 2011 to correct errors in its reported financial results for fiscal 2010 and prior years. Specifically, the Company disclosed that it

had "adjusted" and reduced pre-tax operating income as a result of accounting irregularities that occurred in fiscal 2010 and prior fiscal years, principally in the Company's MSS operations in the Nordic region and that such irregularities were the result  as well as "suspected intentional misconduct" by senior financial staff and other management.

The June 15, 2011 Form 10-K also detailed the impact of the accounting improprieties on operating income for each of the Company's reporting segments for fiscal 2010 and fiscal 2011.  In particular, the Company's MSS segment overstated operating income by $52 million – 8.2% – for 2010.  The Company also admitted that Computer Sciences had overstated reported earnings per share results, income from continuing operations, and net income in each of the four quarters of fiscal 2010.

## III.   ARGUMENT

### A.     The Related Actions Pending before this Court Should be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii).

Under Federal Rule of Civil Procedure 42(a), consolidation is appropriate when actions involve common questions of law or fact.  *See* Fed. R. Civ. P. 42(a).  At present, there are four securities class actions pending before this Court against Computer Sciences and certain of its officers and directors:  (1) *City of Roseville Employees' Retirement System v. Computer Sciences Corp. et al.*, No. 11-cv-00610-TSE-IDD; (2) *Murphy v. Computer Sciences Corp. et al.*, No. 11-cv-00636-TSE-IDD; (3) *Kramer v. Computer Sciences Corp. et al.*, No. 11-cv-00751-TSE-IDD; and (4) *Goldman v. Computer Sciences Corp. et al.*, No. 11-cv-00777-TSE-IDD.

These Actions, despite alleging different, yet overlapping, class periods,[2] present identical factual and legal issues, assert identical claims under the securities laws, and name the same defendants.  Because these actions are based on the same facts and involve the same subject matter, the same discovery will be relevant to all lawsuits.  Thus, consolidation is appropriate here.  *See In re MicroStrategy Sec. Litig.*, 110 F. Supp. 2d 427, 430-32 (E.D. Va. 2000) (consolidating over two dozen similar cases filed under the Exchange Act despite "differences among the various suits with respect to the class period and parties.").[3]

**B.     The Pension Trust Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for appointing a lead plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(i); *see In re MicroStrategy*, 110 F. Supp. 2d at 432-36.  As is shown below, the Pension Trust should be appointed as lead plaintiff.

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  Here, the relevant notice was published on *Business Wire* on June 3, 2011.  *See* Reilly Decl., Ex. A.  Within 60 days after publication of the notice, any person who is a member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.   15 U.S.C. §78u-4(a)(3)(A)(i)(II).

---

[2]      The *City of Roseville Employees' Retirement System* and *Murphy* actions assert class periods running from August 11, 2010 through May 25, 2011.  The *Kramer* and *Goldman* actions assert an extended class period running from May 21, 2009 through May 25, 2011.  For purposes of this motion, the Pension Trust uses the longer class period.

[3]      Unless otherwise noted, all emphasis is added and internal citations omitted.

Second, the PSLRA provides that within 90 days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> > (aa) has either filed the complaint or made a motion in response to a notice . . .;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### 1.      The Pension Trust Timely Moves for Appointment as Lead Plaintiff

All class members who are interested in moving for appointment as lead plaintiff in this matter must do so by August 2, 2011. 15 U.S.C. §78u-4(a)(3)(A)(II). Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, the Pension Trust hereby moves this Court in a timely manner to be appointed Lead Plaintiff on behalf of all members of the class.

### 2.      The Pension Trust Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Trust purchased 8,400 shares of Computer Sciences' stock, held 7,300 shares at the end of the Class Period, and suffered approximately $120,000 in losses. Reilly Decl., Ex. B. Accordingly, upon information and belief, the Pension Trust has the largest financial interest in the outcome of this litigation. 15 U.S.C. §78u-4(a)(3)(B).

### 3. The Pension Trust Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *See In re Microstrategy*, 110 F. Supp. 2d at 435-36; *see also In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003). These factors are easily satisfied here.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. "A person's claim is 'typical' when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Microstrategy*, 110 F. Supp. 2d at 435. Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See In re Bearingpoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) ("But it is also true that the . . . typicality requirement[] [does] not require that members of the class have identical factual and legal claims in all respects.").

The Pension Trust satisfies the typicality requirement of Rule 23 because, just like all other class members, it: (1) purchased Computer Sciences stock during the Class Period at artificially inflated prices; and (2) suffered damages thereby.  Thus, the Pension Trust's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The PSLRA directs the court to limit its inquiry of the movant's adequacy to represent the class to the following:  (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See In re Microstrategy*, 110 F. Supp. 2d at 435; *accord Cree*, 219 F.R.D. at 372.  Thus, the inquiry at this stage "need not be as searching as the one triggered by a motion for class certification, because the inquiry focuses solely on whether the person will be an appropriate class representative, and not whether the class may ultimately be certified."  *In re Microstrategy*, 110 F. Supp. 2d at 435. The Pension Trust easily satisfies the focused inquiry at this stage.

Here, the Pension Trust is an adequate representative of the class because its interests in aggressively pursuing the claims against defendants are clearly aligned with the interests of the members of the class, who similarly suffered losses because of defendants' false statements to the market.  There is no antagonism between the Pension Trust's interests and those of the other members of the class.  Moreover, the Pension Trust is precisely the type of institutional investor Congress sought to encourage to lead securities cases like this one when it passed the PSLRA.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001) ("The plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's

legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs.").

In addition, as demonstrated below, the Pension Trust's proposed lead and liaison counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the Pension Trust *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C. The Pension Trust's Selection of Lead and Liaison Counsel Should Be Approved

Pursuant to the PSLRA, the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class he seeks to represent. 15 U.S.C. §78u-4(a)(3)(B)(v). In that regard, the Pension Trust, as the presumptively most adequate plaintiff, has selected Robbins Geller to serve as Lead Counsel and Reilly to serve as Liaison Counsel, subject to this Court's approval. Robbins Geller possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Robbins Geller has been appointed as lead or co-lead counsel in landmark class actions, including *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002); *see also* Reilly Decl., Ex. C. Both firms have served as class counsel in this Court, and have successfully worked together as lead and liaison counsel as well. *See* Reilly Decl., Ex. C, D. The Pension Trust's selection of Lead and Liaison Counsel for the class should be approved.

## IV. CONCLUSION

For the foregoing reasons, the Pension Trust respectfully requests the Court consolidate the related Actions pending before this Court, appoint it as Lead Plaintiff under the PSLRA, and approve its selection of Robbins Geller and Reilly as Lead and Liaison Counsel.

DATED: August 2, 2011                    LAW OFFICES OF CRAIG C. REILLY
                                         CRAIG C. REILLY, VSB #20942


                                         /s/ Craig C. Reilly
                                _____
                                         CRAIG C. REILLY, ESQ.

                                         111 Oronoco Street
                                         Alexandria, VA  22314
                                         Telephone:  703/549-5354
                                         703/549-2604 (fax)
                                         craig.reilly@ccreillylaw.com

                                         [Proposed] Liaison Counsel

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SHAWN A. WILLIAMS
                                         AELISH M. BAIG
                                         Post Montgomery Center
                                         One Montgomery Street, Suite 1800
                                         San Francisco, CA  94104
                                         Telephone:  415/288-4545
                                         415/288-4534 (fax)

                                         [Proposed] Lead Counsel for Plaintiffs

                                         CAVANAGH & O'HARA
                                         PATRICK J. O'HARA
                                         407 East Adams Street
                                         Springfield, IL  62701
                                         Telephone:  217/544-1771
                                         217/544-9894 (fax)

                                         Additional Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 2, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ CRAIG C. REILLY, ESQ.
CRAIG C. REILLY, ESQ.
VSB # 20942
111 Oronoco Street
Alexandria, VA  22314
TEL: 703/549-5354
FAX: 703/549-2604
EMAIL:  craig.reilly@ccreillylaw.com

[Proposed] Liaison Counsel