**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

IN RE COMPUTER SCIENCES )
CORPORATION SECURITIES )        Civil Action No. 1:11-cv-610-TSE-IDD
LITIGATION )
)
_____ )

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

SKADDEN, ARPS, SLATE, MEAGHER &  FLOM LLP

David E. Carney (Va. Bar No 43914)
Jennifer L. Spaziano (admitted *pro hac vice*)
1440 New York Avenue NW
Washington, DC 20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
Email:  David.Carney@skadden.com
Email:  Jen.Spaziano@skadden.com

Jay B. Kasner (admitted *pro hac vice*)
Scott D. Musoff (admitted *pro hac vice*)
Four Times Square
New York, NY 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
Email:  Jay.Kasner@skadden.com
Email:  Scott.Musoff@skadden.com

*Counsel for Computer Sciences Corporation,
Michael W. Laphen, Michael J. Mancuso and Donald G. DeBuck*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................4

I.   THE COMPLAINT DOES NOT ALLEGE WITH THE REQUIRED
     PARTICULARITY ANY FACTS GIVING RISE TO A STRONG INFERENCE
     THAT ANY DEFENDANT ACTED WITH SCIENTER ................................................4

     A.   The Complaint Does Not Allege That Any Defendant Had A Personal
          Financial Motive To Commit Securities Fraud .....................................................5

     B.   The Complaint Does Not Allege Scienter With Respect To Accounting In
          The Nordic Region................................................................................................5

     C.   The Complaint Does Not Allege Scienter With Respect To CSC's Internal
          Controls ................................................................................................................9

     D.   The Complaint Does Not Allege Scienter With Respect To The NHS
          Program ..............................................................................................................10

II.  THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE THAT DEFENDANTS
     MADE FALSE STATEMENTS OR OMISSIONS OF MATERIAL FACT ..................12

     A.   Plaintiff's Loss Causation Argument Is Baseless.................................................13

     B.   Many Of The Challenged Statements Constitute Inactionable "Puffery" .............14

     C.   The Information Allegedly Omitted From The Challenged NHS Statements
          Was Publicly Disclosed......................................................................................14

     D.   The Complaint Does Not Sufficiently Allege That The Challenged Statements
          Were False Or Misleading...................................................................................16

     E.   The PSLRA's Safe Harbor Provision Applies To All Of CSC's Forward-
          Looking Statements.............................................................................................17

III. THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE A CLAIM UNDER
     SECTION 20(a)..........................................................................................................19

CONCLUSION....................................................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989)...................................................15-16

*Asher v. Baxter Int'l Inc.*, 377 F.3d 727 (7th Cir. 2004) ...........................................................15

*Bartley v. Merrifield Town Ctr. Ltd. P'ship*, 580 F. Supp. 2d 495 (E.D. Va. 2008).................1, 10

*Breton, LLC v. Lincoln Nat. Life Inc. Co.*, --- F. Supp. 2d ---,
    2011 WL 3678148 (E.D. Va. Aug. 19, 2011)...........................................................1, 10

*Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104 (N.D. Cal. 2009) .................................................13

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer*, --- F. Supp. 2d ---,
    2011 WL 3799588 (N.D. Ga. Aug. 26, 2011) ................................................................13

*City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, Nos. 10-2788, 10-3815,
    2011 WL 3695897 (3d Cir. Aug. 24, 2011).......................................................................4

*Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307 (S.D. Fla. 2004)........................................12

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) .............................................................4, 13

*Ganino v. Citizens Utilities Co.*, 228 F.3d 154 (2d Cir. 2000) ....................................................15

*Hillson Partners Ltd. v. Adage*, 42 F.3d 204 (4th Cir. 1994).....................................................14

*Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267 (S.D. Fla. 2008) .......................12

*In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759 (E.D. Va. 2007),
    *rev'd on other grounds*, 576 F.3d 172 (4th Cir. 2009)..................................................6, 13

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ....................................................9

*In re Constellation Energy Group, Inc. Sec. Litig.*, 738 F. Supp. 2d 614 (D. Md. 2010)............11

*In re Crimi Mae, Inc. Sec. Litig.*, 94 F. Supp. 2d 652 (D. Md. 2000)............................................8

*In re E.Spire Commc'ns., Inc. Sec. Litig.*, 127 F. Supp. 2d 734 (D. Md. 2001) ............................6

*In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432 (S.D.N.Y. 2005)..................................13

*In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261 (S.D.N.Y. 2009) .......................13

*In re Inspire Pharm., Inc. Sec. Litig.*, 515 F. Supp. 2d 631 (M.D.N.C. 2007).............................17

*In re Marsh & McClennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) .............9

*In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) ............................ 6, 7

*In re Mutual Funds Inv. Litig.*, 590 F. Supp. 2d 741 (D. Md. 2008) ............................................ 8

*In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379 (4th Cir. 2005) ..................................... 14, 18

*In re UBS Auction Rate Sec. Litig.*, No. 08-2967,
    2010 WL 2541166 (S.D.N.Y. June 10, 2010) .................................................................. 10

*In re VeriFone Holdings, Inc. Sec. Litig.*, No. 07-6140,
    2011 WL 1045120 (N.D. Cal. Mar. 22, 2011) ................................................................. 10

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
    432 F. Supp. 2d 571 (E.D. Va. 2006) ........................................................................ 15, 17

*Juntii v. Prudential-Bache Sec., Inc.*, 993 F.2d 228,
    1993 WL 138523 (4th Cir. May 3, 1993) ........................................................................ 17

*Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011) ............................................ 13

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702 (7th Cir. 2008) ................................. 9

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008) .................................................... 8

*Nolte v. Cap. One Fin. Corp.*, 390 F.3d 311 (4th Cir. 2004) ..................................................... 18

*Ottmann v. Hangar Orthopedic Group, Inc.*, 353 F.3d 338 (4th Cir. 2003) ....................... 5, 8, 17

*Raab v. General Phys. Corp.*, 4 F.3d 286 (4th Cir. 1993) .................................................... 14, 16

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) ..................... 8

*Stratte-McClure v. Morgan Stanley*, 784 F. Supp. 2d 373 (S.D.N.Y. 2011) .............................. 11

*Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438 (S.D.N.Y. 2008) ...................................... 13

*Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162 (4th Cir. 2007) ..................................... *passim*

*Teamsters Local 445 Freight Division v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 2008).......... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................... 5, 6, 15

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ................................................. 18

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ................................... 11

## **Other Authorities**

Hazen, 4 Law Sec. Reg. (6th Ed.) .................................................................................................. 8

Computer Sciences Corporation ("CSC" or the "Company"), Michael W. Laphen, Michael J. Mancuso and Donald G. DeBuck (the "Individual Defendants" and, together with the Company, "Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss the Corrected Consolidated Class Action Complaint (the "Complaint").[1]

## <u>PRELIMINARY STATEMENT</u>

Plaintiff's opposition fails to address – and thereby concedes[2] – many of the arguments Defendants advanced in their opening memorandum demonstrating why the Complaint fails to meet the heightened pleading requirements of the PSLRA.[3]  Although it squeezes as many words as possible out of the Court's 30-page limit (*see* Opp'n at 13-15, 24-25), Plaintiff responds to "straw man" arguments designed to divert attention from its failure to respond to the actual arguments and simply regurgitates the allegations of the Complaint, which Defendants effectively debunked.  (*See* Opp'n at 3-10, 13, 14-15, 16-19.)

By way of example, Plaintiff asserts that "Defendants argue that allegations derived from confidential sources are inherently unreliable," and devotes more than a page of its opposition to establishing the unremarkable (and undisputed) point that confidential sources "*can* support a strong inference of scienter."  (Opp'n at 11-12 (emphasis in original).)  But Defendants did not

---

[1]  On October 19, 2011, after Defendants filed their Motion to Dismiss, Plaintiff filed a Corrected Consolidated Complaint, which purportedly "correct[ed] . . . the title and resignation date" of one of Plaintiff's confidential sources.  (Doc. 63.)  Because the "corrections" did not change the paragraph numbering, references in Defendants' opening memorandum to the "Complaint" can be deemed references to the Corrected Complaint.

[2]  *See, e.g.*, *Breton, LLC v. Lincoln Nat. Life Inc. Co.*, --- F. Supp. 2d ----, 2011 WL 3678148, at *12 (E.D. Va. Aug. 19, 2011) (plaintiff effectively conceded attorney's fee issue raised in defendant's motion for summary judgment by not addressing it in opposition);  *Bartley v. Merrifield Town Ctr. Ltd. P'ship*, 580 F. Supp. 2d 495, 502 n.3 (E.D. Va. 2008) (plaintiff conceded argument raised in motion to dismiss by not rebutting it in opposition).

[3]  Capitalized terms not defined herein shall have the meaning set forth in Defendants' opening memorandum.

argue that the allegations derived from confidential sources are *per se* unreliable; rather, Defendants explained why the information purportedly proffered by Plaintiff's confidential sources *is* unreliable in this case, for example, because it is undisputed that Plaintiff's main confidential source was not even at CSC during the proposed three-year class period. (Mem. at 4, 18-19 and 21.) Plaintiff does not even address this point and thereby concedes it.

Plaintiff also mischaracterizes the law. While Plaintiff effectively concedes that the Complaint fails to allege scienter on the part of the Individual Defendants with respect to the accounting issues identified in the Nordic Region – asserting that "CSC, at a minimum, is liable for these admitted intentional false statements" (*see* Opp'n at 2) – it argues that scienter is still adequately pled as to CSC as long as some agent of the corporation somewhere in the world engaged in deliberately fraudulent conduct. But that is simply not the law in this Circuit (or elsewhere for that matter). The law is clear that to allege scienter on behalf of a corporation in this context, a plaintiff must allege facts that support a strong inference that at least one authorized agent of the corporation acted with scienter "*in making* the false statement" at issue. *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007) (emphasis added). The Complaint utterly fails to satisfy this burden as Plaintiff effectively concedes that those alleged to have made the misstatements in connection with the Nordic accounting issues (the Individual Defendants) did not act with scienter.

With respect to the NHS program, Plaintiff circumvents the arguments advanced by Defendants which demonstrate that far from being deliberately concealed, delays and difficulties associated with the NHS program were publicly reported since its inception in 2002 and the scope and deadlines for the program have been amended multiple times, including in April 2009. Although the Complaint is replete with references to these delays and difficulties (*see, e.g.*,

Compl. ¶¶ 37, 47, 57, 120-121, 127-128, 137, 148-149, 182, 208-209, 225, 241-242 and 247), Plaintiff now desperately seeks to morph its Complaint into a new theory, asserting that "[t]his case has nothing to do with unforeseen delays and setbacks" but rather alleges that no later than May 2008, CSC "could never operationally and technologically perform the NHS Contract's terms due to fatal flaws with the software's conception, development, and implementation." (Opp'n at 1 (emphasis omitted).)

Yet, there are no particularized facts to support the implausible theory that CSC could never have performed under the NHS relationship and somehow kept this hidden for over three years, despite the numerous changes to the terms and structure of the NHS relationship, NHS's payments to CSC for work performed and the fact that the relationship and work under the NHS program continues today. *See Teachers*, 477 F.3d at 185 ("Indeed, the lengthy period strengthens a competing inference that the plaintiffs filed their complaint simply to embark on a fishing expedition with the hope of catching a valid claim."). Further ignoring Defendants' arguments, Plaintiff persists in repeating the mischaracterization of the program in the Complaint as a single "NHS Contract" and continues to argue that CSC's purported inability to comply with its contractual obligations in May and August 2008 is relevant to statements made by Defendants with respect to *different* contractual obligations that existed during the proposed three-year class period. Again, Plaintiff relies for this allegation upon a confidential witness who was long gone from CSC during the relevant time period. While Plaintiff may want to blind itself to these facts, this Court should not do so in reviewing the sufficiency of the Complaint.

Plaintiff also mischaracterizes Defendants' decision not to move to dismiss the Complaint for failure to allege loss causation as a substantive admission of "the element of loss causation," which Plaintiff argues is also an admission of both falsity and materiality. (*See* Opp'n at 2, 20,

24 n.17.) This argument is utterly baseless. Loss causation is a separate element of a claim for securities fraud that presupposes falsity and materiality. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Defendants' decision not to separately challenge loss causation while expressly challenging falsity and materiality does not constitute a concession as to all three elements. To the contrary, if the Court concludes, as it should, that the Complaint does not allege scienter, falsity or materiality, then it does not even need to reach the issue of loss causation. Indeed, courts routinely dismiss complaints that have adequately alleged loss causation but failed to plead other elements of a Section 10(b) claim. (*See* Section II.A, *infra*.)

In short, Plaintiff's securities fraud claims fall well short of the mark, as does its ancillary control person claim, which is dependent on the existence of a securities fraud claim. The Complaint should be dismissed with prejudice.

## **ARGUMENT**

### I. **THE COMPLAINT DOES NOT ALLEGE WITH THE REQUIRED PARTICULARITY ANY FACTS GIVING RISE TO A STRONG INFERENCE THAT ANY DEFENDANT ACTED WITH SCIENTER.**

Defendants demonstrated that the Complaint does not allege facts that support any inference of scienter, let alone the strong inference required by the PSLRA. (*See* Mem. at 12-22.) Contrary to Plaintiff's assertion, Defendants did not examine the Complaint's allegations in "isolation." (*See* Opp'n at 12.) Rather, Defendants analyzed each of Plaintiff's scienter allegations and demonstrated that not a single one of them, *nor all of them together*, establishes the strong inference of scienter that Plaintiff must plead. *See City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, Nos. 10-2788, 10-3815, 2011 WL 3695897, at *3 (3d Cir. Aug. 24, 2011) ("To put it succinctly, it does not take much to explain that zero plus zero equals zero."). Plaintiff's opposition does not compel a different conclusion.

4

A.    **The Complaint Does Not Allege That Any Defendant Had A Personal Financial Motive To Commit Securities Fraud.**

Plaintiff does not – and cannot – contest that the Complaint fails to allege that any Individual Defendant had any motive to commit securities fraud.  (Mem. at 13-14.)  Instead, Plaintiff addresses this point in a footnote where, quoting *Tellabs*, it asserts that "Defendants' argument regarding the absence of motive and opportunity allegations is without moment." (Opp'n at 11 n.3.)  *Tellabs*, however, holds that "the absence of a motive allegation *is not fatal*." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007) (emphasis added).  As the Supreme Court stated, "the significance that can be ascribed to an allegation of motive, *or lack thereof*, depends on the entirety of the complaint." *Id.* (emphasis added).  Given the significant weaknesses in the Complaint, Plaintiff's failure to allege any motive to commit securities fraud weighs *against* a finding of scienter.  *See Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 348 (4th Cir. 2003) (failure to allege "personal motives" to commit fraud, among other things, "show[ed] that the requisite strong inference of scienter is lacking").

B.    **The Complaint Does Not Allege Scienter With Respect To Accounting In The Nordic Region.**

Plaintiff does not meaningfully respond to the numerous arguments that weigh against scienter with respect to the accounting issues in the Nordic Region.  Plaintiff does not address the fact that CSC itself identified these errors, undertook an investigation, disclosed its findings to the public and remediated the material weaknesses.  (*See* Mem. at 14.)  Plaintiff sidesteps the patent ambiguity in the Complaint where Plaintiff alleges, on the one hand, that EMEA management did not want the Internal Audit Department in the Nordic Region and, on the other hand, that EMEA management conducted its own audit of the Nordic Region and reported

5

"significant" deficiencies to Internal Audit and many others.  (*See id.* at 15.)[4]  Plaintiff ignores its failure to allege that any Defendant actually possessed the report of the EMEA audit in 2008. (*See id.* at 15-16.)  And Plaintiff fails to explain why information purportedly provided by the Nordic Finance Director and the Nordic Finance Manager – both of whom were involved in the improprieties in the Nordic Region – can be considered reliable.  (*See id.* at 16.)[5]

Instead of undertaking the futile task of addressing the deficiencies in its scienter allegations, Plaintiff argues that the nature of the issues in the Nordic Region, alone, are sufficient to give rise to an inference of scienter.  (Opp'n at 18-19.)  However, while Plaintiff characterizes these issues as "basic GAAP" (*id.* at 19), "scienter requires more than a misapplication of accounting principles."  *See In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759, 774 (E.D. Va. 2007), *rev'd on other grounds*, 576 F.3d 172 (4th Cir. 2009) (quoting *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 634-35 (E.D. Va. 2000) (rejecting scienter inference based on GAAP violations where nature and size of accounting issues suggested that management did not know or recklessly disregard inflated financials); *In re E.Spire Commc'ns., Inc. Sec. Litig.*, 127 F. Supp. 2d 734, 745 (D. Md. 2001) (declining to give inferential weight to company's restatement of financials without "evidence of 'corresponding fraudulent intent'").  As

---

[4]   Plaintiff's response to Defendants' argument misses the point.  (*See* Opp'n at 14 n.6.)  The "inconsistency" in Plaintiff's allegations is not with respect to whether a "financial" audit of the Nordic Region was conducted but with respect to Plaintiff's assertion that EMEA senior management did not want internal auditors to audit the Nordic Region at the same time they were sharing their own negative audit findings with the internal audit department.  It is this ambiguity that "count[s] against inferring scienter." *Tellabs*, 551 U.S. at 326.

[5]   In a footnote, Plaintiff attempts to buttress the information purportedly provided by these individuals, asserting that their statements are consistent with "CSC's ultimate disclosures, the accounts of other sources, and the corroboration by the very person who was dispatched to the Nordic Region to replace them."  (Opp'n at 15 n.8.)  This is not true.  These individuals purportedly asserted that the Nordic Region accounting was consistent with company policy (*see* Compl. ¶¶ 77-78), which cannot be reconciled with the facts alleged.

this Court has held, accounting irregularities can have inferential weight for scienter when "the number, size, timing, nature, frequency, and context of the misapplication or restatement are taken into account." *MicroStrategy*, 115 F. Supp. 2d at 635.

Plaintiff also argues that scienter can be inferred because CSC's financial statements were "impacted." (Opp'n at 19-20.)  But an impact on a company's financial statements alone does not give rise to an inference of scienter.  *See MicroStrategy*, 115 F. Supp. 2d at 634-35.  In any event, the Complaint does not challenge CSC's conclusion in June 2011 that the net impact of the out-of-period adjustments was immaterial to CSC's financial results for the periods affected by the adjustments.[6]

Plaintiff, moreover, utterly fails to demonstrate facts showing that *each* Defendant acted with scienter.  The Complaint has sparse allegations with respect to Laphen and DeBuck and virtually no allegations with respect to Mancuso, who joined CSC three months after the start of the proposed class period.[7]  Plaintiff does not even address this deficiency in its opposition, compelling the conclusion that Plaintiff has not stated – and cannot state – a claim as to any of them.  Indeed, Plaintiff effectively concedes as much.  (*See* Opp'n at 2.)

Plaintiff instead argues that the Individual Defendants' mere "access" to information that contradicted CSC's public statements impacts the scienter inquiry.  (Opp'n at 2, 14, 15.)  But allegations that corporate executives have access to information due to their positions are

---

[6]  Plaintiff takes issue with Defendants' statements regarding the effect of the Nordic adjustments on "EPS" in FY 2010, but concedes, as it must, that CSC made voluntary 401(k) plan contributions and a voluntary interest payment that year.  (Opp'n at 19 n.11.)  The fact that CSC voluntarily reduced its earnings weighs against a finding that Defendants knowingly or recklessly allowed the Nordic Region to engage in improper accounting for the purpose of inflating the Company's earnings – an inference Plaintiff does not refute.

[7]  Plaintiff would have the Court believe that Mancuso, who joined CSC in December 2008, began committing fraud on day one of his employment.  That is wholly incredible.

insufficient to raise a strong inference of scienter.  (Mem. at 19-20.)  If facts of this sort were sufficient, then "every corporate executive who participates in the day-to-day management of this company would be exposed to liability for securities fraud."  *In re Crimi Mae, Inc. Sec. Litig.*,  94 F. Supp. 2d 652, 661 (D. Md. 2000).

Having effectively conceded failure to allege scienter on the part of the Individual Defendants, Plaintiff argues that it nevertheless has adequately pled scienter as to CSC.  (*See* Opp'n at 16-18.)  This argument, however, is premised on a fundamental misunderstanding of the law of this Circuit.  As stated in *Teachers*, "[i]f a defendant is a corporation, the plaintiff must allege facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation, since corporate liability derives from the actions of its agents." *Teachers*, 477 F.3d at 184 (citations omitted); *In re Mutual Funds Inv. Litig.*, 590 F. Supp. 2d 741, 749 (D. Md. 2008) (same).[8]  Scienter does not mean knowledge alone, but rather refers to "a mental state embracing intent to deceive, manipulate, or defraud."  *Ottmann*, 353 F.3d at 343 (citations omitted).  Thus, *Teachers* stands for the proposition that a corporation cannot be held liable for securities fraud unless the plaintiff alleges that at least one corporate agent made a false or misleading statement with scienter.  *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254-55 (11th Cir. 2008) (dismissing complaint that failed to raise a strong inference that any

---

[8]   Plaintiff mischaracterizes its attempt to impute scienter to CSC as falling under the corporate scienter doctrine, when in fact what Plaintiff argues is the *collective* scienter doctrine, which seeks to attribute scienter "to the corporation from a group of agents or officers."  Hazen, 4 Law Sec. Reg. § 12.8[4][D] (6th ed.).  Plaintiff incorrectly asserts that Defendants do not dispute this doctrine.  (Opp'n at 16 n.9.)  Although the *Teachers* court did not directly address the *collective* scienter doctrine, it based its finding on the Fifth Circuit's decision in *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363-67 (5th Cir. 2004), which expressly rejected it.  Indeed, the treatise cited by Plaintiff concludes that the Fourth Circuit, in *Teachers*, also rejected the collective scienter doctrine.  Hazen, 4 Law Sec. Reg. § 12.8[4][D] (6th ed.).

corporate agents "were both responsible for issuing the allegedly false public statements and were aware of the alleged fraud").[9]  Because the Complaint does not allege scienter on the part of any individual who made or issued any of the statements at issue relating to the accounting issues in the Nordic Region, the Complaint necessarily does not allege scienter on the part of CSC.[10]

## C.   The Complaint Does Not Allege Scienter With Respect To CSC's Internal Controls.

With respect to CSC's internal controls, Plaintiff simply ignores the fact that the former Internal Audit Director – the sole purported source for Plaintiff's allegations regarding deficiencies in CSC's internal audit function – left CSC in August 2008, the first month of the proposed three-year class period.  (Compl. ¶ 30.)  This individual therefore was not in a position to know what CSC did in response to his alleged complaints about the internal audit department or anything about the internal audit department after August 2008.  (*See* Mem. at 18.)  Plaintiff, moreover, disregards the significant legal authority cited by Defendants establishing that (i) the identification of material weaknesses in internal controls in FY 2011 does not establish scienter for past statements certifying the effectiveness of internal controls and (ii) allegations that a

---

[9]   Plaintiff's reliance on *Makor Issues & Rights, Ltd. v. Tellabs, Inc.* and *Teamsters Local 445 Freight Division v. Dynex Capital Inc.* (Opp'n at 16) is misplaced as they both *reject* the collective scienter doctrine.  *See Makor Issues & Rights*, 513 F.3d 702, 710 (7th Cir. 2008); *Teamsters*, 531 F.3d 190, 195 (2d Cir. 2008).  *In re Marsh & McClennan Cos., Inc. Securities Litigation*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006), and *In re BISYS Securities Litigation*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005), also cited by Plaintiff (Opp'n at 17), have no application because they applied the collective scienter doctrine, which both the Fourth Circuit and the Second Circuit have since rejected.

[10]   Allegations that Ivor Canavan, a senior manager in the Nordic Region, had knowledge of the misconduct (*see* Opp'n at 17) does not change the analysis as Canavan is not alleged to have made the statements underlying the Complaint.  Nor does the Complaint allege that Scott Delanty, the Chief Auditing Executive, or unnamed "[t]op management in EMEA" (*see id.* at 17-18) made any of the challenged statements.  In any event, allegations that local managers directed misconduct are not sufficient to establish scienter on the part of a company.  *See In re BearingPoint Sec. Litig.*, 525 F. Supp. 2d at 778.

senior executive had a "hands-on" management style do not support a "strong inference" of scienter. (*See* Mem. at 19-20.) Having failed to address these arguments, Plaintiff has conceded them. *See Breton, LLC*, 2011 WL 3678148, at *12; *Bartley*, 580 F. Supp. 2d at 502. The Complaint thus does not allege scienter as to any Defendant with respect to internal controls.

**D.     The Complaint Does Not Allege Scienter With Respect To The NHS Program.**

With respect to the NHS program, Plaintiff again ignores the arguments advanced by Defendants that demonstrate the deficiencies in the scienter allegations. Plaintiff persists in its assertion that *questions* asked by members of the UK Parliament can be considered *facts* somehow admitted by CSC. (*See* Mem. at 20.)[11] Plaintiff fails to address the fact that the Complaint does not allege the contents of the report purportedly provided to the CSC Board in May 2008. (*See id.* at 21.) Plaintiff fails to address the inconsistency between the Internal Audit Director's purported statement that "there were definite GAAP violations" and his purported statement that "there had not been any financial audit of the NHS Contract or audit of controls over the contract." (*See id.*) Plaintiff does not address the fact that the information attributed to the former Deputy Head of Testing confirms that, as late as April 2011, Laphen believed CSC would succeed in implementing the Lorenzo software by "August 2011." (*See id.* at 22.) And Plaintiff does not meaningfully address the fact that CSC's obligations under the NHS program

---

[11]   Such questions are no different than allegations advanced in a government complaint or grandstanding by a U.S. legislator, which do not give rise to an inference of scienter. *See, e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, No. 07-6140, 2011 WL 1045120, at *11-12 (N.D. Cal. Mar. 22, 2011) (rejecting attempt to use allegations in SEC complaint and transcripts of testimony to infer scienter because allegations did not specify facts demonstrating defendant knew statements were false); *In re UBS Auction Rate Sec. Litig.*, No. 08-2967, 2010 WL 2541166, at *19 n.11 (S.D.N.Y. June 10, 2010) (finding allegations in SEC complaint and settlement order to be of limited value to scienter because respondent neither admits nor denies liability).

changed in April 2009. (*See id.*) Instead, Plaintiff merely recites the allegations of the Complaint. (*See* Opp'n at 13.)

Recognizing that these allegations are insufficient, Plaintiff asserts that scienter can be inferred because of the size of the NHS program. (*See id.* at 18.) However, it is not enough to allege that "'facts critical to a business's core operations on an important transaction generally are so apparent that knowledge may be attributed to the company and its key officers.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (citation omitted).[12] Rather, a plaintiff must also allege (i) "detailed and specific allegations about management's exposure to factual information within the company" such as "'specific admissions from top executives that they are involved *in every detail of the company*" or (ii) that "the falsity is *patently obvious*." *Id.* at 1000-01 (emphasis added). The Complaint does not do either. The fact that "Laphen held weekly meetings with the CSC executives in charge of testing" and "stay[ed] on top of" the NHS program (Opp'n. at 18) is "not enough to satisfy th[is] narrow exception." *See Zucco*, 552 F.3d at 1000 (allegations regarding "several meetings" insufficient); *In re Constellation Energy Group, Inc. Sec. Litig.*, 738 F. Supp. 2d 614, 635 (D. Md. 2010) (finding that "a general level of importance [of an issue to a company] simply does not 'warrant imputing to the defendants knowledge of the subtleties' of [that issue]") (citation omitted). Moreover, far from alleging "patent" issues with respect to the NHS program, the Complaint demonstrates that, as late as April 2011, there were internal disagreements about whether CSC would succeed in

---

[12]  *Stratte-McClure v. Morgan Stanley*, 784 F. Supp. 2d 373 (S.D.N.Y. 2011), does not hold otherwise. (*See* Opp'n at 18.) There, the court held that where corporate officers signed filings with the SEC disclosing a mark-down equal to nearly one quarter of the company's quarterly revenue, the officers "had a duty to familiarize themselves with the nature of the mark-downs." *Stratte-McClure*, 784 F. Supp. 2d at 389. It does not hold, as Plaintiff implies, that scienter can or should be attributed here merely as a result of the size of the "NHS Contract."

implementing the Lorenzo software by "August 2011." (Compl. ¶ 66.) The competing non-culpable inference is far more cogent and compelling – that CSC timely disclosed NHS's first assertion of breach in February 2011.

Plaintiff also argues that scienter can be inferred because CSC's financial statements were "impacted." (Opp'n at 19-20.) As noted above, however, an impact on a company's financial statements alone does not give rise to an inference of scienter. *See, e.g.*, *MicroStrategy*, 115 F. Supp. 2d at 634-35. In any event, the Complaint does not sufficiently allege facts supporting the conclusion that CSC was required to take a "loss" on the NHS program. (*See* Opp'n at 19.) Indeed, CSC's financials statements throughout the proposed three-year class period were audited and there was no restatement. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1291 (S.D. Fla. 2008) (inference against scienter arises where financials were regularly audited and "[t]here are no allegations concerning financial restatements, auditor resignations, or other 'red flags'"); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1323-24 (S.D. Fla. 2004) (lack of restatements or auditor resignations weighs against scienter).

Implicitly acknowledging the deficiencies in its scienter allegations with respect to the Individual Defendants, Plaintiff again tries to save its claims by invoking the collective scienter doctrine. Again, that effort fails as Plaintiff does not identify any agent of CSC that made a false or misleading statement with scienter. (*See* Section I.B, *supra*.)

## II. THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE THAT DEFENDANTS MADE FALSE STATEMENTS OR OMISSIONS OF MATERIAL FACT.

Defendants also established that the Complaint fails to allege that any Defendant made a false statement or omission of material fact. (Mem. at 23-30.) Defendants walked through the three categories of statements alleged and demonstrated why the Complaint fails to allege an actionable statement with respect to each. (*Id.*) Plaintiff jumbles these statements together,

failing to address the actual language of the challenged statements and instead arguing in generalities. (*See* Opp'n at 20-29.) Plaintiff's arguments are unavailing.

### A.   Plaintiff's Loss Causation Argument Is Baseless.

As a threshold matter, Plaintiff asserts that Defendants' decision not to seek dismissal on the basis of Plaintiff's failure to allege loss causation somehow constitutes an admission that the alleged statements are both false and material. (Opp'n at 2, 20, 24 n.17.) Plaintiff's argument is groundless. In *Dura*, the Supreme Court recognized that loss causation is a separate element of a securities fraud claim that presupposes a material misrepresentation. *Dura*, 544 U.S. at 342 (loss causation is a separate element requiring "a causal connection between *the* material misrepresentation and the loss") (emphasis added). Plaintiff cites no authority (nor is there any that we know of) that supports that a complaint pleads materiality or scienter merely because loss causation is not challenged on a motion to dismiss. To the contrary, courts routinely dismiss cases for failure to allege a false statement or scienter both without ever reaching the loss causation issue, *see In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261 (S.D.N.Y. 2009); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104 (N.D. Cal. 2009); *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438 (S.D.N.Y. 2008), and where loss causation was properly pled, *see In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d at 773; *City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer*, ---- F. Supp. 2d ----, 2011 WL 3799588 (N.D. Ga. Aug. 26, 2011); *In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432 (S.D.N.Y. 2005).[13]

---

[13]   *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011), the sole case Plaintiff cites for this remarkable proposition, says nothing about the legal effect of a defendants' decision not to challenge loss causation on a motion to dismiss. Rather, it sets the bar for what a *plaintiff* must state in a complaint to sufficiently allege loss causation. *Id.* at 472-73.

**B.      Many Of The Challenged Statements Constitute Inactionable "Puffery."**

Plaintiff then argues that "Defendants' false statements and omissions were material" (Opp'n at 20-22) (again creating a straw man) in order to avoid Defendants' argument that many of the challenged statements – such as Laphen's statements regarding his "hopes" and "expectations" regarding the program, (*see* Compl. ¶¶ 112, 113, 165 and 182), his views regarding the Company's "confidence" in and "progress" on the program (*see id.* ¶¶ 111, 120, 121, 135, 137, 148, 168, 184 and 186), and the feedback received from the NHS (*see id.* ¶¶ 127 and 137) – are inactionable "puffery."   (*See* Mem. at 26-29.)   Plaintiff all but ignores the language of these statements, converts Defendants' argument to a blanket "materiality" argument and argues that the "NHS Contract" was large and that statements regarding the "NHS Contract" therefore were material.  (Opp'n at 21-22.)  The challenged statements cannot be viewed through such a broad lens.  Rather, the Court must look at each statement and determine whether it is actionable.  *E.g.*, *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 388 n.6 (4th Cir. 2005).  As Defendants demonstrated, the vast majority of the statements are not actionable "puffing."[14]

**C.      The Information Allegedly Omitted From The Challenged NHS Statements Was Publicly Disclosed.**

Plaintiff next argues that Defendants' "truth-on-the-market defense fails."  (Opp'n at 23-24.)  However, Defendants established, through citation to public filings and analyst reports that the Court can judicially notice (a fact Plaintiff does not contest), that information regarding the status of the NHS program, including the revision in contract scope and the delays which

---

[14]   Plaintiff addresses the puffing point in a footnote, asserting that "[a] puffing statement is *per se* immaterial" and that Defendants' puffing argument is therefore "unavailing."  (*See* Opp'n at 22 n.13.)  Even assuming Plaintiff intended there to be a "not" before "per se," Plaintiff does not even attempt to explain why the challenged statements *are not* immaterial as a matter of law under *Raab v. General Physics Corporation*, 4 F.3d 286 (4th Cir. 1993), and *Hillson Partners Ltd. Partnership v. Adage*, 42 F.3d 204 (4th Cir. 1994).

underlie the Complaint, were well-known to the public and that, in the context of these negative disclosures, any positive statements by CSC are not actionably false.  Plaintiff asserts that this argument "ignore[es] the allegations of the Complaint."  (Opp'n at 23).  Not only does it not ignore the Complaint's allegations, but this Court is required to consider publicly available information under *Tellabs*.  551 U.S. at 322-23 ("[C]ourts *must* consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motion to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (emphasis added); *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 582 (E.D. Va. 2006) (concluding that court should consider analyst reports when a claim is based on the fraud-on-the-market theory because, in that instance, the reasonable investor is the market itself).

Plaintiff attempts to closet the public's awareness of the delays and status of the NHS program using case law that purportedly limits the "truth-on-the-market" defense.  The cases that Plaintiff cites (Opp'n at 23), however, are inapposite.  In *Ganino v. Citizens Utilities Company*, the information available to the public was limited to company disclosures and the court was not convinced that these were even factually accurate.  *Ganino*, 228 F.3d 154, 167-68 (2d Cir. 2000). Likewise, in *Asher v. Baxter International Incorporated*, defendants argued that the truth was revealed to the market through the company's disclosures.  *Asher*, 377 F.3d 727, 734 (7th Cir. 2004).  But here, the market was inundated with public information regarding the complex, multi-year NHS program, all coming from different credible sources, including the U.K. government, analysts and CSC itself.  (Mem. at 9-11.)  Indeed, in the *Apple* case that Plaintiff touts (Opp'n at 23), the Ninth Circuit found that such a pattern of disclosure is sufficiently "intense" and "credibl[e]" to trigger the truth-on-the-market doctrine.  *Apple Computer Sec. Litig.*,

15

886 F.2d 1109, 1116 (9th Cir. 1989) (finding on summary judgment that market was aware of risks with an Apple product in light of extensive media coverage of the risks and problems with the product).  Thus, to the extent Plaintiff alleges CSC did not disclose information it should have disclosed, Defendants would satisfy the truth-on-the-market defense under *Apple* as a matter of law.  *See Raab*, 4 F.3d at 289 (affirming dismissal of securities action where allegedly material information – a contract slowdown – was made "credibly available to the market by other sources") (quoting *Apple*, 886 F.2d at 1115).

Plaintiff's attempt to distinguish *Raab* from the facts of this case is unavailing.  (*See* Opp'n at 23.)  The *Raab* court noted that in a fraud-on-the-market case, "the presumption that the market has internalized all publicly available information cuts both ways" and that "the failure to disclose material information may be excused where that information has been made credibly available to the market by other sources."  *Raab*, 4 F.3d at 289 (citing *Apple*, 886 F.2d at 1115).  Thus, it does not matter whether the market learned of information through a company report or other third parties, so long as the information was "credibly available to the market."  *Id.*  Here, information on the NHS program was credibly available to the market through contemporaneous government reports, analyst reports, and CSC public filings – facts Plaintiff cannot refute.

### D. The Complaint Does Not Sufficiently Allege That The Challenged Statements Were False Or Misleading.

When it finally addresses an argument that Defendants did make, Plaintiff concedes that it did not state, for each purportedly false statement, why the statement is false or how the omitted fact renders the statement misleading.  (*See* Opp'n at 24-25.)  Plaintiff nevertheless argues that it satisfied its pleading burden by identifying the purportedly false statements in a series of paragraphs and then providing a laundry list of reasons why all statements made in a particular quarter were false.  (*Id.*)  Such imprecise and incomplete pleading simply is not

16

sufficient.  *See Iron Workers*, 432 F. Supp. 2d at 582-83 (dismissing Section 10(b) claim where plaintiff failed to "point to each statement" and explain why it was false or misleading); *In re Inspire Pharm., Inc. Sec. Litig.*, 515 F. Supp. 2d 631, 636 (M.D.N.C. 2007) (same).

Plaintiff's argument that the Complaint specifically alleges who made each "statement" (Opp'n at 28) ignores the pleading defect present in the paragraphs where Plaintiff explains why "Defendants'" statements are purportedly false or misleading.   These paragraphs state in conclusory fashion that "*Defendants'* statements in [the preceding paragraphs] were materially false and misleading."  (*See* Compl. ¶¶ 115-119, 123-124, 130-131, 139-140, 152-155, 170-173, 188-192, 216-220, 227-228 and 244-246 (emphasis added).)   In other words, although the Complaint specifies who made each statement, it seeks to impose liability on all Defendants collectively.   This pleading error is more than simply cosmetic.   By grouping Defendants together in the paragraphs alleging why statements are false or misleading, Plaintiff improperly end-runs its pleading obligation to give notice to each Individual Defendant as to what is specifically false about each statement that he made.  *Ottmann*, 353 F.3d at 343; *see also Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228, 1993 WL 138523, at *2 (4th Cir. May 3, 1993) (rejecting group pleading because it fails to "provide a defendant with fair notice of the claim against him or to protect a defendant from harm to his reputation or goodwill").

### E.   The PSLRA's Safe Harbor Provision Applies To All Of CSC's Forward-Looking Statements.

Finally, Plaintiff incorrectly argues that the challenged statements are not entitled to the safe-harbor protections of the PSLRA.  (Opp'n at 26-28.)  First, Plaintiff asserts that Defendants had no reasonable basis to make statements of current fact.  This contention rests on the assertion that the statements to which Defendants point in their brief are "mixed" representations not subject to safe harbor protection.  (Opp'n at 26.)  A court, however, must carefully consider each

17

statement to determine whether it is forward-looking – a task Plaintiff studiously avoids.  *See In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d at 388 n.6.  As Defendants demonstrated, the Complaint is replete with such forward-looking statements.  (*See* Mem. at 26-27.)

Plaintiff also asserts that the statements made were made with *actual* knowledge of their falsity.  (Opp'n at 27.)  Yet it refers to no specific *factual* statements made by Defendants.  (*Id.*)  Where Plaintiff does reference Defendants' statements of their own beliefs, it fails to allege that these statements were untrue.  (*See* Opp'n at 27 n.23.)  For example, the Complaint contains no allegation that Laphen did not have "confidence" that "continues to build" or that Laphen was actually not "pleased with our progress" in November 2008.  Nor is there any sufficient factual allegation that Laphen personally knew facts that made his claim in November 2008 that "[w]here we are today is incorporated into the guidance" or his claim early in the fourth quarter that, based on actually achieving two key milestones in the third quarter, CSC was "on target relative to" a fourth quarter milestone.  Plaintiff's allegations of actual intentional "lie[ing] to investors" is undercut by Plaintiff's own purported evidence from the Deputy Head of Testing who acknowledged Laphen's (and, even, his own) optimism about the NHS program.  (*See* Compl. ¶ 66.)  The only clear allegation about Laphen's state of mind thus refutes the assertion that he "lied to investors."  Plaintiff therefore cannot meet the requirements of *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), that to plead that an expressed opinion constitutes a false factual statement, "the complaint must allege that the opinion expressed was different from the opinion actually held by the speaker."  *Nolte v. Cap. One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir. 2004).

Plaintiff further argues that Defendants' cautionary language was not meaningful, asserting that Defendants "point[ed] to only a single boilerplate statement."  (Opp'n at 27.)  But

Defendants explained that *all* of CSC's Forms 10-Q and the analyst calls contained adequate cautionary language and then cited exemplary exhibits. (*See* Mem. at 27-28.) These are not "a single boilerplate statement" – they are meaningful cautionary language that provide the necessary basis for the safe harbor on a repeated basis. Moreover, contrary to Plaintiff's assertion, these statements do address the specific risk that CSC faced when the statements were made. (*See* Ex. 11, 11/29/09 10-Q at 41 ("unforeseen future events to the extent they add costs beyond those included in the Company's current estimated costs to complete could potentially adversely impact [the Company's recovery of its investment in the NHS program] and the Company's liquidity").)

## III. THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE A CLAIM UNDER SECTION 20(a).

Because the Complaint does not assert an underlying violation of the Exchange Act, Plaintiff's Section 20(a) claims against the Individual Defendants must be dismissed. In addition, Plaintiff concedes – as it must – that Mancuso was not a control person prior to December 1, 2008, and therefore cannot be held liable for actions occurring prior to that time. (*See* Opp'n at 29 n.27.)[15]

---

[15] Contrary to Plaintiff's assertion in the opposition, the Complaint *does not* limit the Section 20(a) claim to the time when Mancuso was a CSC employee. (*See* Compl. ¶¶ 316-319, 344-347.)

## <u>CONCLUSION</u>

The Complaint should be dismissed with prejudice.


| | |
|---|---|
|     October 28, 2011 | Respectfully submitted, |
| Date | |

/s/

Jay B. Kasner (admitted *pro hac vice*)            David E. Carney (Va. Bar No. 43914)
Scott D. Musoff (admitted *pro hac vice*)          Jennifer L. Spaziano (admitted *pro hac vice*)
Skadden, Arps, Slate, Meagher & Flom LLP       Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square                                              1440 New York Avenue, NW
New York, NY 10036                                         Washington, DC 20005
Telephone:  (212) 735-3000                              Telephone:  (202) 371-7000
Facsimile:  (212) 735-2000                               Facsimile:  (202) 393-5760
Jay.Kasner@skadden.com                                  David.Carney@skadden.com
Scott.Musoff@skadden.com                               Jen.Spaziano@skadden.com

*Counsel for Computer Sciences Corporation,*
*Michael W. Laphen, Michael J. Mancuso and Donald G. DeBuck*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing (NEF) to the following:

Benjamin G. Chew
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
bchew@pattonboggs.com

*Local Counsel for Lead Plaintiff Ontario Teachers' Pension Plan Board*

Craig Crandall Reilly
LAW OFFICE OF CRAIG C. RANDALL
111 Oronoco St.
Alexandria, VA 22314
craig.reilly@ccreillylaw.com

*Counsel for Plaintiffs City of Roseville Employee's Retirement System (Case No. 1:11-cv-00610), Arthur I Murphy (Case No. 1:11-cv-00636) and Norton Goldman (Case No. 1:11-cv-00777)*

Thomas A. Dubbs
Jonathan M. Plasse
Joseph A. Fonti
Dominic J. Auld
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
tdubbs@labaton.com
jplasse@labaton.com
jfonti@labaton.com
dauld@labaton.com

*Counsel for Lead Plaintiff Ontario Teachers' Pension Plan Board*

Elizabeth Kathleen Tripodi
LEVI & KORSINSKY LLP
1101 30th Street, NW
Suite 115
Washington, DC, 20007
etripodi@zlk.com

*Counsel for Plaintiff Hilary Kramer (Case No. 1:11-cv-00751)*

Dated:  October 28, 2011

/s/
David E. Carney (Va. Bar No. 43914)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
David.Carney@skadden.com

*Counsel for Computer Sciences Corporation, Michael W. Laphen, Michael J. Mancuso, and Donald G. DeBuck*