UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE COMPUTER SCIENCES
CORPORATION SECURITIES LITIGATION

Civ. A. No. 1:11-cv-610-TSE-IDD

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND PAYMENT OF LITIGATION EXPENSES AND
<u>CLASS REPRESENTATIVE'S REQUEST FOR REIMBURSEMENT OF EXPENSES</u>**

**LABATON SUCHAROW LLP**

Jonathan M. Plasse (admitted *pro hac vice*)
Joseph A. Fonti (admitted *pro hac vice*)
Javier Bleichmar (admitted *pro hac vice*)
Dominic J. Auld (admitted *pro hac vice*)
Serena Hallowell (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7044

**PATTON BOGGS LLP**
Benjamin G. Chew (VSB#29113)
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6015
Facsimile: (202) 457-6315
Email: bchew@pattonboggs.com

Susan R. Podolsky, Esq. (VSB#27891)
1800 Diagonal Road
Suite 600
Alexandria, VA 22314
Telephone: (571) 366-1702
Email: susanpodolsky@verizon.net

*Counsel for Class Representative Ontario Teachers'
Pension Plan Board and the Proposed Settlement Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... iv

PRELIMINARY STATEMENT ......................................................... 1

ARGUMENT ......................................................... 3

I.     OVERVIEW OF THE CONSIDERATIONS AND METHODS OF DETERMINING REASONABLENESS OF ATTORNEYS' FEES ................... 3

II.    THE REQUESTED ATTORNEYS' FEES MEET THIS COURT'S OBJECTIVES AND ARE REASONABLE UNDER EITHER THE PERCENTAGE OF THE FUND METHOD OR THE LODESTAR METHOD .............. 6

      A.     The Requested Fee Is Fair and Reasonable under Both the Percentage of Fund and the Lodestar Methods ................................................. 8

           1.     The Fee Request Is Appropriate under the *Barber* Factors ........................ 8

                (a)     The Results Obtained for the Settlement Class Versus the Amount in Controversy Support the Requested Fee (*Barber* Factor 8) ................................................. 8

                (b)     Novelty and Difficulty of the Questions Raised Support the Requested Fee (*Barber* Factor Two) ............................................. 10

                (c)     The Amount of Time and Labor Expended and Counsel's Opportunity Costs in Pressing the Litigation Support the Requested Fee (*Barber* Factors One and Four) ........................... 12

                (d)     Experience, Reputation, and Skill of Counsel Support the Fee Request (*Barber* Factor Three) ............................................. 15

                (e)     The Attorneys' Expectations at the Outset of the Litigation Support the Fee Request (*Barber* Factor Six) .............................. 16

                (f)     Time Limitations Imposed by the Client or Circumstances (*Barber* Factor Seven) ................................................. 18

                (g)     The Requested Fee Is Below Fee Awards Approved in Cases with Similar Recoveries (*Barber* Factors Five and Twelve) ....................................................... 18

                (h)     The Undesirability of the Case and the Nature/Length of the Professional Relationship Between Attorney and Client Both Support the Requested Fee (*Barber* Factors Ten and Eleven) ....................................................... 22

2.      The Requested Fee Was Negotiated with Class Representative and Is Presumptively Reasonable ................................................................... 22

3.      The Requested Fee Is also Reasonable under the Lodestar Method......... 23

III.   COUNSEL SHOULD BE PAID FOR LITIGATION EXPENSES REASONABLY INCURRED IN CONNECTION WITH THIS ACTION.....................25

IV.    CLASS REPRESENTATIVE IS ENTITLED TO REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES, INCLUDING LOST WAGES, PURSUANT TO THE PSLRA ..........................................................................................28

V.     CONCLUSION.................................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Aetna Inc. Sec. Litig.,*
  No. CIV. A. MDL 121, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) .........................................21

*In re Am. Express Fin. Adv. Sec. Litig.,*
  No. 04-Civ.173 (DAB), slip op. (July 19, 2007) ....................................................................20

*Anixter v. Home-Stake Prod. Co.,*
  77 F.3d 1215 (10th Cir. 1996) ...............................................................................................17

*In re AT&T Corp. Sec. Litig.,*
  455 F.3d 160 (3d Cir. 2006)......................................................................................................4

*In re AT&T Corp. Sec. Litig.,*
  No. 00-5364 (GEB), 2005 WL 6716404 (D.N.J. Apr. 25, 2005) ............................................20

*In re Bank One Sec. Litig.,*
  No. 00-CV-767, slip op. (N.D. Ill. Sept. 1 2005).....................................................................20

*Barber v. Kimbrell's Inc.,*
  577 F.2d 216 (4th Cir. 1978) ......................................................................................... passim

*Bentley v. Legent Corp.,*
  849 F. Supp. 429 (E.D. Va. 1994), *aff'd,* 50 F.3d 6 (4th Cir. 1995)......................................17

*Blum v. Stenson,*
  465 U.S. 886 (1984)..................................................................................................................4

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980)..................................................................................................................3

*In re Boeing Sec. Litig.,*
  No. C97-1715Z, slip op. (W.D. Wa. Apr. 11, 2002) ..............................................................20

*In re Bristol-Myers Squibb Co. Sec. Litig.,*
  No 07-5867, slip op. (S.D.N.Y. Dec. 8, 2009).......................................................................28

*Camden I Condominium Ass'n v. Dunkle,*
  946 F.2d 768 (11th Cir. 1991) ..................................................................................................4

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) ..................................................................................................29

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).........................................................................................22

*In re Cigna Corp. Sec. Litig.*,
    No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ....................................20

*In re CVS Corp. Sec. Litig.*,
    No. 01-11464 (JLT), slip op. (D. Mass. Sept. 8, 2005) .........................................20

*Domonoske v. Bank of America, N.A.*,
    790 F. Supp. 2d 466 (W.D. Va. 2011) ...............................................................4, 25

*In re DPL Inc. Sec. Litig.*,
    307 F. Supp. 2d 947 (S.D. Ohio 2004) ..................................................................20

*Dusek v. Mattel*,
    No. 99-CV-10864-MRP, slip op. (C.D. Cal. Oct. 1, 2003) ....................................20

*In re FirstEnergy Corp. Sec. Litig.*,
    No. 5:03-CV-1684, slip op. (N.D. Ohio Jan. 3, 2005).............................................21

*In re Fleming Cos. Inc. Sec. Litig.*,
    No. 5-03-MD-1530-(TJW), slip op. (E.D. Tex. Nov. 30, 2005)..............................20

*Florin v. NationsBank of Georgia*,
    34 F.3d 560 (7th Cir. 1994) .....................................................................................4

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1150 (CPS) (SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................29

*Goldenberg v. Marriott PLP Corp.*,
    33 F. Supp. 2d 434 (D. Md. 1998).............................................................................5

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ....................................................................................4

*Hershey v. Pac. Inv. Mgmt. Co. LLC*,
    No. 05-cv-04681, slip op. (N.D. Ill. May 4, 2011) ..................................................20

*In re Honeywell Int'l Inc. Sec. Litig.*,
    No. 2:00cv03605 (DRD), slip op. (D.N.J. Aug. 18, 2004)......................................20

*In re Int'l Rectifier Corp. Sec. Litig.*,
    No. CV 07-02544-JFW (VBKx), slip op. (C.D. Cal. Feb. 8, 2010) .......................20

*Irvine v. Imclone Systems Inc.*,
    No. 02-cv-109-RO, slip op. (S.D.N.Y. Aug. 3, 2005) ............................................21

*In re JDS Uniphase Corp. Sec. Litig.*,
  No. C-02-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).....................................17

*Jones v. Dominion Res. Servs., Inc.*,
  601 F. Supp. 2d 756 (S.D.W. Va. 2009)...................................................................5, 16, 25, 26

*Kay Co. v. Equitable Prod. Co.*,
  749 F. Supp. 2d. 455 (S.D.W. Va. 2010).................................................................................5

*In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*,
  No. 1:04CV00416, slip op. (M.D.N.C. Feb. 15, 2007)..........................................................21

*McKnight v. Circuit City Stores Inc.*,
  14 F. App'x. 147 (4th Cir. 2001) .............................................................................................8

*In re Mercury Interactive Corp. Sec. Litig.*,
  No. 5:05-CV-3395-JF (PVT), slip op. (N.D. Cal. Sept. 26, 2008) .........................................20

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).................................................9

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) .......................................................................................9

*In re MicroStrategy, Inc. Sec. Litig.*,
  172 F. Supp. 2d 778 (E.D. Va. 2001) .............................................................................. passim

*In re Moneygram Int'l Inc. Sec. Litig.*
  No. 08-883, slip op. (D. Minn. June 18, 2010)......................................................................21

*In re NTL Inc. Sec. Litig.*,
  No. 02 Civ. 3013(LAK)(AJP), 2007 WL 623808 (S.D.N.Y. Mar. 1, 2007) .........................15

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) .................................................................................................4

*In re Philip Servs. Corp. Sec. Litig.*,
  No. 98 Civ. 835(AKH), 2007 WL 959299 (S.D.N.Y. Mar. 29, 2007) ...................................21

*In re Priceline.com, Inc. Sec. Litig.*,
  No. 3:00-CV-1884(AVC), 2007 WL 215592 (D. Conn. July 20, 2007) ................................21

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) .......................................................................................................4

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..............................................................................................17

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    461 F. Supp. 2d 383 (D. Md. 2006) ............................................................5, 7, 25

*Scheiner v. i2 Technologies Inc.*,
    No. 3:01-CV418-H, slip op. (N.D. Tex. Oct. 1, 2004) ...........................................21

*Scheiner v. i2 Technologies Inc.*,
    No. 3:01-CV418-H, slip op. (N.D. Tex. May 26, 2005)...........................................21

*In re Scor Holding (Switzerland) AG Sec. Litig.*,
    No. 04 Civ. 7898 (DLC), slip op. (S.D.N.Y. Dec. 17, 2008) .................................21

*Smith v. Krispy Kreme Doughnut Corp.*,
    2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ............................................................5

*In re St. Paul Travelers Sec. Litig. II*
    No. 04-CV-4697-JRT-FLN, slip op. (D. Minn. July 24, 2008)...............................21

*Strang v. JHM Mortg. Sec. Ltg. P'ship*,
    890 F. Supp. 499 (E.D. Va. 1995) ...........................................................................5

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993).....................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).....................................................................................................8

*In re The Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ...................................................................... passim

*In re Thirteen Appeals Arising*,
    56 F.3d 295, 301 (1st Cir. 1995)................................................................................4

*In re Tycom Ltd. Sec. Litig.*,
    No. 03-CV-03540 (GEB)(DEA), slip op. (D.N.J. Aug. 25, 2010) .........................21

*In re Verisign, Inc. Sec. Litig.*,
    No. C-02-2270-JWC(PVT), slip op. (N.D. Cal. Apr. 24, 2007)..............................21

*In re Wachovia Corp. ERISA Litig.*,
    No. 3:09cv262, 2011 WL 5037183 (W.D.N.C. Oct. 24, 2011)................................4

*Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................................4

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ......................................................................................4

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
  No. 09-CV-1376-LHK (PSG), slip op. (N.D. Cal. Nov. 11, 2011) ........................................20

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................................................29

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................................................29

STATUTES

15 U.S.C. § 78a ........................................................................................................................10

15 U.S.C. §78u-4(a)(4) .........................................................................................................1, 28

15 U.S.C. §78u-4(a)(60) ............................................................................................................4

Sarbanes Oxley Act of 2002 ....................................................................................................10

OTHER AUTHORITIES

Fed. R. Civ P. 23(f) .................................................................................................................13

Fed. R. Civ P. 23(h) ..................................................................................................................1

Fed. R. Civ P. 54(d)(2) ..............................................................................................................1

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) .....................................................28

## PRELIMINARY STATEMENT

Labaton Sucharow LLP, Court-appointed Class Counsel in this securities class action, respectfully submits this memorandum of law in support of: (i) its motion, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, for an award of attorneys' fees and payment of litigation expenses to be paid out of the Settlement Fund; and (ii) Class Representative's application for reimbursement of its reasonable costs and expenses (including lost wages) directly related to the representation of the proposed Settlement Class, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(a)(4).[1]

As set forth in the Stipulation, Defendant Computer Sciences Corporation ("CSC") and the Individual Defendants (together with CSC, the "Defendants") and Class Representative agreed to a settlement of $97,500,000 in cash, which has been accruing interest (the "Settlement Fund" or "Settlement").  The Settlement is an exceptional result and would resolve claims that were the subject of 19 months of intensive and hard-fought litigation between Class Representative and Defendants.  If approved by the Court, the Settlement would be the third largest all cash recovery in a securities class action in the Fourth Circuit and the second largest all cash recovery in such a case in the Eastern District of Virginia.[2]  The Settlement Amount is

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth and defined in the Stipulation and Agreement of Settlement, dated May 14, 2013 (ECF No. 309-1, the "Stipulation").  For ease of reference, the definitions from the Stipulation are summarized in the attached Glossary of Defined Terms.  All emphasis is added herein, unless otherwise noted. Internal quotations and citations are omitted.

[2] *See* Joint Declaration of Joseph A. Fonti, Benjamin G. Chew, and Susan R. Podolsky in Support of Proposed Class Settlement, Plan of Allocation and Award of Attorneys' Fees and Expenses (the "Joint Declaration" or "Joint Decl.") ¶ 10, Ex. 5 thereto.

The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to the Joint Declaration for a detailed description of the history of the Action; the nature of the claims asserted against Defendants; the extensive prosecutorial efforts; the risks faced by the Settlement Class of continued litigation; the negotiations leading to the Settlement; the value of the Settlement to the Settlement Class; the risks and uncertainties of

far above both the median ($8.3 million) and the average ($55.2 million) settlement recoveries in securities class actions since the passage of the PSLRA.  Joint Decl. ¶ 10, Ex. 4.  As compared to the amount of damages at issue, the recovery represents as much as between 14% and 38% of maximum provable damages, which is well within the range of, and in most instances much greater than, settlements obtained in other securities cases.  *Id*. ¶¶ 9, 137-141.

Class Counsel respectfully seeks an award of attorneys' fees in the amount of 19.5% of the Settlement Fund, and payment of $3,064,815.86 in expenses reasonably incurred in the course of pursuing the claims against Defendants.  Class Representative, supported by the Declaration of Gregory Harnish, Ontario Teachers' Pension Plan Board, In Support of Class Representative's Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for an Award of Attorneys Fees and Payment of Litigation Expenses ("Harnish Declaration") (Ex. 2), respectfully seeks payment of an award, pursuant to the PSLRA, totaling $60,905.70 in reimbursement of costs and expenses, including lost wages, as a result of the time expended in representing the proposed Settlement Class.

The requested fee of 19.5%, or approximately $19 million, was negotiated at arm's-length between Class Representative and Class Counsel, both of whom have extensive experience and expertise prosecuting securities class actions.  The applicable case law gives such a negotiated fee arrangement a presumption of reasonableness.   Notwithstanding that presumption, however, the requested fee meets this Court's articulated objectives when considering fee requests and is reasonable under both the percentage of fund and lodestar

---

continued litigation; Class Representative's compliance with the Court's Preliminary Approval Order; and a description of the services provided by Class Counsel.

All exhibits referenced herein are annexed to the Joint Declaration.  For clarity, citations to exhibits that themselves have attached exhibits, will be referenced herein as "Ex.__-__."  The first numerical reference refers to the designation of the entire exhibit attached to the Joint Declaration and the second reference refers to the exhibit designation within the exhibit itself.

methods.  This Action involved complex and intricate legal and factual issues centering on the high-stakes implementation of health care across the United Kingdom and a nuanced interpretation of multifaceted accounting and internal controls guidelines.  Moreover, the Action settled only weeks before trial, after nearly two years of adversarial litigation, including the review and analysis of millions of pages of documents and the taking of dozens of depositions across a wide-range of regional and international locations.  Defendants were represented by very experienced defense attorneys, who are nationally recognized for their skill and tenacity. Moreover, the 19.5% fee requested herein is consistent with the precedent of this Court and other courts considering fee awards in comparable class action securities cases (*see* Table in Section II.A.1.(g), *infra,* listing comparable cases), and represents a modest enhancement of less than 1.2 times Labaton Sucharow's and Patton Boggs's lodestar to account for the unique difficulty of this case and the high degree of success achieved.  Finally, the 19.5% fee provides an appropriate incentive component to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class in a securities fraud case.

For all of these reasons, a fee award of 19.5% is appropriate and should be approved.

## ARGUMENT

**I.     OVERVIEW OF THE CONSIDERATIONS AND METHODS OF DETERMINING REASONABLENESS OF ATTORNEYS' FEES**

The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Although there are two methods for calculating attorneys' fees in a class action, the lodestar method and the percentage of the fund method, the Supreme Court has suggested that in the case of a common fund, the attorneys' fee should be determined on a percentage of recovery basis.  *See*

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class . . .").

Although the Fourth Circuit has not mandated application of one particular method to the evaluation of attorneys' fees in common fund cases, a majority of other circuit courts have favored the percentage of the fund method in common fund cases.[3]  That is also true of many district courts within the Fourth Circuit, as these courts have used the percentage of the fund method with increasing frequency.  *See, e.g.,  In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 785-86 (E.D. Va. 2001) ("the trend in securities class actions and other common fund cases has been toward use of the percentage method"); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) ("other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases"); *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 475 (W.D. Va. 2011) (applying the percentage method after agreeing with other courts that the "percentage method better aligns the interests of class counsel and class members"); *In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2011 WL 5037183, at *2 (W.D.N.C. Oct. 24,

---

[3] Two Circuit Courts of Appeal have ruled that the percentage of recovery method is mandatory in common fund cases.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) and *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  The majority of the Circuit Courts of Appeals have endorsed the percentage of recovery method in common fund cases.  *See In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995); *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Florin v. NationsBank of Georgia*, 34 F.3d 560, 566 (7th Cir. 1994); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994).  Moreover, the PSLRA, which governs this Action, contemplates that courts will award fees based on a percentage of the fund. *See* 15 U.S.C. §78u-4(a)(60) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

2011) ("[t]he majority of courts have endorsed the percentage method for calculating attorneys'

fee awards in common fund cases"); *Kay Co. v. Equitable Prod. Co*., 749 F. Supp. 2d. 455, 463

(S.D.W. Va. 2010) ("In light of the prevailing view among courts that the percentage method is

the superior method for calculating attorneys' fees from a common fund . . . I find that the

percentage method is the appropriate method for determining reasonable attorneys' fees in this

case."); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The

percentage method has overwhelmingly become the preferred method for calculating attorneys'

fees in common fund cases."); *Smith v. Krispy Kreme Doughnut Corp*., 2007 WL 119157, at *1

(M.D.N.C. Jan. 10, 2007) ("On the question of attorneys fees, the Court finds that in a common

case such as this, a reasonable fee is normally the percentage of the Class recovery.");

*Goldenberg v. Marriott PLP Corp*., 33 F. Supp. 2d 434, 438 (D. Md. 1998) ("recent decisions

within this Circuit . . . have endorsed the percentage method"); *Strang v. JHM Mortg. Sec. Ltg.

P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less

burdensome than the traditional lodestar method, and offers a more reasonable measure of

compensation for common fund cases").

In employing the percentage of the fund method, some courts within the Fourth Circuit

and in this district have also applied the lodestar method as a cross-check.  *See, e.g.*, *Mills*, 265

F.R.D. at 261 ("using the percentage of fund method and supplementing it with the lodestar cross

check . . . take[s] advantage of the benefits of both methods"); *In re Royal Ahold N.V. Sec. &

ERISA Litig*., 461 F. Supp. 2d 383, 385 (D. Md. 2006) (courts within the Fourth Circuit "have

suggested a flexible analysis that uses the percentage of recovery method but applies the lodestar

method as a cross-check"); *Cf. MicroStrategy*, 172 F. Supp. 2d at 788 (analyzing lodestar figure).

As between the two methods, this Court observed in *MicroStrategy* that "neither the

lodestar method nor the percentage method, by itself, is adequate to all circumstances; both are useful tools for trial courts to use . . . because setting a fair and reasonable fee in the PSLRA context requires meeting three objectives, and neither method, by itself, addresses all three objectives."   172 F. Supp. 2d at 787.   The Court went on to explain that the critical considerations in the evaluation of fee awards are three-fold:

> ***First***, the fee selected must adequately compensate lead counsel for the time expended on the case.  The lodestar method ensures this much is accomplished.  ***Second***, the fee selected must also, where appropriate, include a reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors.  Again, the lodestar method can accommodate this objective because it includes the use of a trial court's qualitative assessment and judgment to adjust the simple product of billable hours and rates.  ***But finally and equally importantly***, the process of setting a proper fee in a PSLRA case must include an incentive component to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class in a securities fraud case.  The percentage method aids in meeting this objective as it is based on the contingent fee concept and PSLRA cases are essentially contingent fee cases; there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery.

*Id*. at 787-88.  As set forth below, the requested attorneys' fee of 19.5% meets all of these objectives, and is fair and reasonable under both methods.  This Court should therefore approve Counsel's requested fee award.

## II.     THE REQUESTED ATTORNEYS' FEES MEET THIS COURT'S OBJECTIVES AND ARE REASONABLE UNDER EITHER THE PERCENTAGE OF THE FUND METHOD OR THE LODESTAR METHOD

The percentage of the fund method is "based on a percentage of the common fund, with the precise percentage selected by the trial court with reference to essentially the same case-specific factors used to adjust, or determine a multiplier for, a lodestar figure."  *MicroStrategy*, 172 F. Supp. 2d at 786-87.  Under the lodestar method, the "trial court must first determine the hours reasonably expended by counsel that created, protected, or preserved the fund.  Then, the number of compensable hours is multiplied by a reasonable hourly rate for the attorneys'

services to produce a lodestar figure." *Id.* at 786.  The lodestar figure may be increased or decreased "based on an assessment of a variety of factors relating to the nature of the case, the market for such legal services, and the result achieved." *Id.*

"[B]oth methods contemplate the exercise of sound judgment by the trial court in adjusting the lodestar figure after a qualitative assessment of various factors or in selecting an appropriate percentage figure after a qualitative assessment of essentially the same factors." *Id.* at 787.  As listed by the Court in *MicroStrategy*, the so-called *Barber* factors include:  (1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectations at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation, and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between the attorney and client; and (12) fee awards in similar cases.  *Id.* at 786 n.23 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)).[4]

The analysis for assessing fees under both methods inherently includes consideration of the three objectives the Court set out in *MicroStrategy*.  Thus, our analysis below—which is

---

[4] Some courts in the Fourth Circuit have relied on the twelve *Barber* factors in determining a reasonable fee under both the percentage of the fund method and the lodestar method.  *See, e.g., Royal Ahold*, 461 F. Supp. 2d at 385 (noting that "under both methods" there are "numerous factors that may be considered in determining a reasonable fee" and listing the twelve *Barber* factors).  Other district courts in the Fourth Circuit apply seven factors, which overlap substantially with the *Barber* factors.  *See Mills*, 265 F.R.D. at 261 ("Because the lodestar is employed as a 'cross check' and because these factors are so similar to the seven factors analyzed within, each of the twelve *Barber* factors will not be laid out and analyzed separately.").  These seven factors are: "(1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases." *Id.* at n.6.

tailored to both methods—demonstrates that the requested fee both meets all of the criteria under

the percentage of fund and lodestar methods and also satisfies this Court's objectives in that it

(i) provides adequate compensation to counsel for the time expended on the case; (ii) rewards

and enhances the lodestar figure to account for the difficulty of the case, the degree of success

achieved, and other qualitative factors; and (iii) includes an incentive component to ensure that

competent, experienced counsel will be encouraged to take up such challenging matters that are

inherently risky, expensive, and time consuming.[5]

### A. The Requested Fee Is Fair and Reasonable under Both the Percentage of Fund and the Lodestar Methods

#### 1. The Fee Request Is Appropriate under the *Barber* Factors

##### (a) The Results Obtained for the Settlement Class Versus the Amount in Controversy Support the Requested Fee (*Barber* Factor 8)

The result achieved for the class is often cited as one of the most important factors in

determining the reasonableness of an attorneys' fee request.  *See McKnight v. Circuit City Stores*

*Inc*., 14 F. App'x. 147, 149 (4th Cir. 2001) ("the most critical factor in calculating a reasonable

fee award is the degree of success obtained"); *see also Mills*, 265 F.R.D. at 261 ("a central

advantage of the percentage of the fund method is that it looks to the results actually obtained by

Lead Counsel rather than just the number of hours they expended, which should be an important

point in awarding fees").

Plaintiff's Counsel have created an extraordinary benefit for the Settlement Class.  The

proposed Settlement Amount of $97.5 million is the second largest all cash settlement ever

---

[5] The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . ."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007). Noteably, while the U.S. Securities and Exchange Commission commenced an investigation into the conduct at issue in the Action in February 2011, it has yet to reach any resolution.

achieved in a securities class action in the Eastern District of Virginia and the third largest all cash settlement in such a case within the Fourth Circuit.  *See* Joint Decl. ¶ 10.  It also is far above both the median ($8.3 million) and the average ($55.2 million) settlement recoveries in securities class actions since the passage of the PSLRA.  *Id.*  Further, as discussed in detail in the Joint Declaration (*see* ¶¶ 9, 131-141) and in Class Representative's concurrently filed brief for final approval of the Settlement ("Final Approval Brief"), the Settlement represents significant percentages of the maximum damages that could be proven at trial, assuming a complete victory on all other merits issues.  Specifically, as detailed in the Coffman Declaration (Ex. 3), ¶¶ 15 -20, the Settlement amounts to between 14% to 38% of maximum damages.

This result compares favorably to other court-approved settlements in PSLRA cases in this and other circuits.  *See, e.g., In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 666 n.22 (E.D. Va. 2001) (approving a settlement estimated to be worth $100 million at the time the motion for final approval of the settlement was filed, which represents approximately 14% of estimated damages).  Indeed, the Settlement significantly exceeds the percentage of recovery in many other PSLRA cases, which themselves were at the higher end of the recovery range.  *See, e.g.*, *In re Merrill Lynch & Co. Research Reports Sec. Litig*., No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The Settlement Fund is approximately $40.3 million. The settlement thus represents a recovery of approximately 6.25% of estimated damages.  This is at the **higher end of the range** of reasonableness of recovery in class actions securities litigations."); *see also* Final Approval Brief, n.6.

The significant result obtained here meets this Court's goal of providing a fair and reasonable fee that rewards counsel for the degree of success achieved, and therefore, supports approval of the fee request.

**(b)      Novelty and Difficulty of the Questions Raised Support the Requested Fee (*Barber* Factor Two)**

The difficulty of the questions raised in the Action support the requested fee.  Courts have long recognized that securities class action litigation is among the most difficult.  *See Mills*, 265 F.R.D. at 263 ("The very nature of a securities fraud case demands a difficult level of proof to establish liability.  Elements such as scienter, reliance, and materiality of representation are notoriously difficult to establish.").  As the Court is well aware, this Action has been vigorously litigated for nearly 19 months and, given its complexity, the trial and post-trial proceedings would have continued to be difficult.

As detailed in the Joint Declaration, the Action alleges violations of the Securities and Exchange Act of 1934 (the "Exchange Act"), raising a panoply of claims against Defendants.  Joint Decl. ¶¶ 11-15.  At every turn, the Action raised difficult legal and factual issues that required creativity and sophisticated analysis.  As the Court is familiar, the Action was hotly contested from motions to dismiss and class certification through summary judgment, and included exhaustive discovery and trial preparation.  *Id*. ¶¶ 19-117.  Settlement negotiations included multiple formal and informal discussions, successfully concluded with United States District Judge Leonie Brinkema.  These discussions were complicated both in terms of the subject matter and damages analyses at issue.  *Id*. ¶¶ 142-157.

Although Plaintiff's Counsel believe that Class Representative has a strong case for liability, the claims against Defendants presented significant challenges in the face of tenacious opposition from Defendants.  To prevail at trial, Class Representative needed to prove that the terms of the NHS Contract were unachievable; Defendants improperly accounted for the contract in violation of GAAP; their disclosure and accounting failures breached CSC's internal control obligations under the Sarbanes Oxley Act of 2002 ("SOX"); and Defendants knew or

consciously disregarded these violations and internal control failures, while making false statements and omissions to the market, resulting in economic loss and damages.  *Id.* ¶ 127.

Defendants vigorously disputed these allegations.  They argued throughout that Class Representative could not establish that Defendants acted with scienter.  *Id.* ¶¶ 24, 104-105, 128. As they did at summary judgment, we believe Defendants would likely have focused at trial on the lack of insider trading to prove that the Individual Defendants had no motive to profit from the alleged fraud and that the challenged statements concerning CSC's accounting for the NHS Contract and its internal controls were made based on the advice of third parties, including outside accountants, further negating an inference of scienter.  *Id.*  The risk that Defendants could prevail was appreciable.

Moreover, given the complex nature of the Action, Class Representative intended to rely heavily on its expert witness, Dr. Douglas Carmichael, to present critical accounting and internal controls expert testimony.  Joint Decl. ¶¶ 88-89, 103.  Had Defendants prevailed in excluding any of the expert's testimony or had the jury discounted his testimony, the presentation of many aspects of Class Representative's case would have been more difficult.  Moreover, presenting this complex evidence persuasively to a jury created its own significant challenges, in addition to the risks inherently present in any "battle of the experts" that would have ensued.  *Id.* ¶ 124.

Additionally, this Action included significant obstacles to establishing loss causation and damages.  Defendants maintained that the alleged misstatements were fully cured during the Class Period, as their damages expert, Dr. Vinita Juneja, opined that certain information was not corrective because it had been previously disclosed.  If Defendants were to have prevailed on these arguments, the jury could have very well dramatically reduced the maximum damages.  *Id.* Additionally, the Parties' experts disagreed as to whether declines related to the Nordic region

were recoverable.  Dr. Juneja assumed (at the request of Defendants' counsel) that declines specifically related to the Nordic region were not recoverable due to the Court's opinion dismissing certain alleged false statements concerning the Nordic region's accounting errors.  In contrast, Class Representative maintained that Nordic-related disclosures were recoverable as a manifestation of the alleged internal control deficiencies that remained actionable.  Finally, the Parties' experts disagreed on the appropriate level of statistical significance on certain corrective disclosure dates.  As a result, while Mr. Coffman opined that maximum inflation per share was $13.25, Dr. Juneja opined that inflation per share was $0, or at most $4.11.  If the Court or jury had determined that Dr. Juneja's analysis was correct, any damages awarded could have been significantly reduced to as little as zero.  *Id.* ¶¶ 131-136.

Accordingly, the novel and highly difficult nature of the issues encountered strongly support the requested attorneys' fee and further satisfy the second *MicroStrategy* objective.

> **(c)** **The Amount of Time and Labor Expended and Counsel's Opportunity Costs in Pressing the Litigation Support the Requested Fee (*Barber* Factors One and Four)**

As detailed in the Joint Declaration and the individual firm declarations submitted therewith (Exs. 8 - A & 9 - A), Labaton Sucharow and Patton Boggs have collectively devoted substantial time and effort to the Action and to the settlement of the claims on terms very favorable to the Settlement Class.  *See MicroStrategy*, 172 F. Supp. 2d at 788 (noting large number of hours reported was reasonable in light of difficulty involved in prosecuting the matter).[6]

---

[6] Ms. Podolsky has submitted a declaration explaining that her legal fees and expenses are being paid by Labaton Sucharow, and she provides a schedule of her expenses for informational purposes.  Ex. 10.

Since the initiation of the Action, Plaintiff's Counsel vigorously pursued the claims, reaching the Settlement just weeks before trial was scheduled to begin.  Counsel's efforts included: (a) conducting significant legal and factual investigation into CSC, including developing numerous sources of non-public information that were critical in enabling Class Representative to overcome, in part, Defendants' motion to dismiss; (b) drafting a detailed consolidated and amended complaint; (c) working with consultants and experts on accounting, internal controls, health information technology, market efficiency, materiality, damages, and causation issues in preparing the complaint, throughout discovery and class certification, and in preparing for trial; (d) prevailing, in part, on Defendants' motion to dismiss and succeeding at class certification, as well as defeating Defendants' Rule 23(f) Petition to the Fourth Circuit Court of Appeals; (e) conducting thorough discovery, including reviewing more than five million pages of documents produced by Defendants and third parties, deposing 27 fact witnesses throughout the United States and in London, England, and defending five fact witness depositions; (f) engaging in extensive expert analysis and discovery, including preparing four expert reports, responding to Defendants' *Daubert* challenge, and taking or defending four expert depositions; (g) conducting rigorous jury research and working with experienced jury and trial consultants to prepare Class Representative's case for trial; (h) preparing substantial pre-trial materials and participating in a pre-trial hearing before the Court; (i) briefing the Parties' competing motions for summary judgment and preparing for the hearing on these motions and Defendants' *Daubert* motion; and (j) thoroughly vetting both sides' damages assumptions, methodologies, and calculations during expert discovery and additionally through the mediation sessions.  *See generally* Joint Decl. ¶ 7.

The substantial time devoted to litigating the claims against Defendants reflects the tremendous effort needed to prosecute those claims and bring them to a favorable resolution. *See MicroStrategy*, 172 F. Supp. 2d at 788 ("A review of the tasks undertaken by lead and affiliated counsel as reported in the fee petition reflects what was observed in the briefs and arguments: All issues were thoroughly investigated, comprehensively researched, and ably presented.").

Class Counsel devoted a number of highly skilled and experienced attorneys to the prosecution of the matter. Many of them committed nearly all of their time to the matter. These attorneys faced a very aggressive and well-equipped opponent, with roughly two dozen Skadden attorneys making appearances in this Action. Joint Decl. ¶¶ 188-189. Such dedication of resources was further required as a function of the expedited case schedule and imminent trial date. This exhaustive effort was undertaken without any guarantee of ever being paid.

Furthermore, Class Counsel undertook day-to-day management of the litigation to ensure the utmost efficiency and avoidance of wasted or duplicate efforts. Joint Decl. ¶ 4. Class Counsel's efforts were concentrated in the hands of a group of its attorneys in order to enhance efficiency and streamline the prosecution. *See* Fonti Decl., Ex. 8 - A.

Labaton Sucharow and Patton Boggs expended more than 34,457 hours in the investigation, prosecution and resolution of the Action through May 24, 2013. However, Plaintiff's Counsel's efforts for the benefit of the Settlement Class will continue, if the Court approves the Settlement. Counsel will continue to work through the settlement administration process, assist Settlement Class Members, and distribute the Settlement proceeds, without seeking any additional compensation.

Accordingly, the enormous amount of time and effort devoted to this Action by Plaintiff's Counsel and the efficient and effective management of the litigation confirm that the

fee award requested is reasonable.  Furthermore, the fee satisfies the first objective outlined in *MicroStrategy* as it would compensate Counsel for the significant amount of time dedicated to prosecuting the claims against Defendants, lending additional support to the fee request.

> **(d)    Experience, Reputation, and Skill of Counsel Support
> the Fee Request (*Barber* Factor Three)**

The experience, reputation, and skill of counsel is another important factor that supports the reasonableness of the requested fee.  *See Mills*, 265 F.R.D. at 262 (approving the requested fee after finding "Lead Counsel to be very experienced and skilled in the field of securities litigation and achieved here a very favorable result for the Class").

Labaton Sucharow is among the nation's preeminent law firms in this area of securities class action litigation and has a long and successful track record in such cases.  *See* Joint Decl. ¶ 185; Ex. 8 - C.  Likewise, Benjamin Chew of Patton Boggs and Susan Podolsky are highly-regarded and experienced litigators, with prior experience as both defendant's and plaintiff's counsel, and have long and successful track records in cases in which they have litigated, as well as extensive experience in this jurisdiction.  *See* Exs. 9 - C & 10 - B.

The quality of the opposition faced by Plaintiff's Counsel should also be taken into consideration in assessing the quality of Counsel's performance.  *See Mills,* 265 F.R.D. at 262. (noting that the quality of lead counsel supports the fee request where lead counsel were up against "experienced and sophisticated defense attorneys").  Here, Defendants were represented by Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), one of the nation's most elite defense firms.  *In re NTL Inc. Sec. Litig*., No. 02 Civ. 3013(LAK)(AJP), 2007 WL 623808, at *7 (S.D.N.Y. Mar. 1, 2007) ("Opposing counsel – the Skadden Arps and . . . law firms – are of the highest quality.").  Skadden brought to bear a sophisticated and impressive defense, including roughly two dozen attorneys from offices around the world.  This firm vigorously represented

the interests of Defendants.  Notwithstanding this formidable opposition, Plaintiff's Counsel's

ability to present a strong case and demonstrate their willingness to continue to trial enabled

them to achieve a very favorable Settlement for the benefit of the Settlement Class.

The quality of the representation provided in this Action to Class Representative and the

Settlement Class (as measured by the results achieved), Plaintiff's Counsel's experience and

skill, and the quality of the opposition, all strongly support the second *MicroStrategy* objective,

as well as the reasonableness of the fee request.

> **(e)      The Attorneys' Expectations at the Outset of the Litigation
>            Support the Fee Request (*Barber* Factor Six)**

Labaton Sucharow and Patton Boggs undertook this Action on an entirely contingent fee

basis, assuming a substantial risk that the litigation would yield no or potentially little recovery

and would leave them uncompensated for their significant investment of time and substantial

expenses.  Courts within the Fourth Circuit have consistently recognized that the risk of

receiving little or no recovery is a major factor in considering an award of attorneys' fees.  *See*

*MicroStrategy*, 172 F. Supp. 2d at 788 ("The percentage method aids in meeting this objective as

it is based on the contingent fee concept and PSLRA cases are essentially contingent fee cases;

there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to

the size of the recovery."  *See also Mills*, 265 F.R.D. at 263 ("counsel bore a substantial risk of

nonpayment . . . [t]he outcome of the case was hardly a foregone conclusion, but nonetheless

counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting

the costs of litigation"); *Jones*, 601 F. Supp. 2d at 762 ("Certainly, attorneys undertaking class

actions bear substantial risks that the litigation will not result in payment.  The attorneys risk

defeat at several stages of litigation; class certification, dispositive motions, and finally, trial.").

From the outset of this Action, Labaton Sucharow and Patton Boggs understood that they were embarking on a complex and expensive litigation with no guarantee of being compensated for the substantial investment of time and money the case would require.  Indeed, Class Counsel was one of only three firms that pursued appointment for lead counsel.  In undertaking that responsibility, counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a case such as this requires.  Indeed, Class Counsel received no compensation during the course of the Action and advanced or incurred more than $3 million in expenses in prosecuting this Action for the benefit of the Settlement Class.  Joint Decl. ¶ 190, Ex. 8 - B.

The risk of no recovery in complex cases of this type is real.  Indeed, even if Class Representative had prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final – a process that could take years.  Class Counsel knows from experience that despite the most vigorous and skillful efforts, a firm's success in contingent litigation, such as this, is never assured, and there are many class actions in which plaintiffs' counsel expended tens of thousands of hours and received ***nothing*** for their efforts.[7]

As discussed herein and in the Joint Declaration, the risk of no recovery was evident from the beginning of this case and persisted up to the Settlement, as both proceeding to trial and

---

[7] For illustrative examples, *see*, *e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial).

dealing with the inevitable appeals presented considerable risk.  Joint Decl. Section VII.

Accordingly, the contingency risk in this case strongly supports the third objective outlined in

*MicroStrategy*, and the requested attorneys' fee.

>    **(f)       Time Limitations Imposed by the Client or Circumstances
>               (*Barber* Factor Seven)**

This Action has been litigated on a fast track and operated under an extremely tight

timetable since its inception, with only 7 months elapsing between the date the Court sustained

the Consolidated Complaint and the date the Parties reached the proposed settlement.  *See*

*MicroStrategy*, 172 F. Supp. 3d at 788 n.32 ("In this division virtually all cases, including this

one, are placed on an expedited docket.").

The Eastern District of Virginia is well known as the "Rocket Docket" and, as is

conventional in this district, all phases of litigating the Action took place simultaneously (*i.e.*,

pleading, class certification, fact discovery, expert discovery, pre-trial designations, and

dispositive motions).  This required an intense level of effort, extreme efficiency, and a high

level of coordination among all Plaintiff's Counsel.  *See e.g.,* Joint Decl. ¶¶ 7, 61-63, 95.

>    **(g)       The Requested Fee Is Below Fee Awards Approved in Cases
>               with Similar Recoveries (*Barber* Factors Five and Twelve)**

"Court[s] look to fee awards in analogous cases to determine the reasonableness of the

percentage requested."  *Mills*, 265 F.R.D. at 263-64.  "[T]he reasonableness inquiry is

necessarily case-specific, and thus the percentage actually awarded varies from case to case."  *Id.*

In this regard, the *Mills* court observed that "though varied, it is worth noting as a starting point

that percentage awards are often between 25% and 30% of the Fund."  *Id.*  The Court went on to

list numerous settlements within and outside of the Fourth Circuit in common fund cases that

awarded fees in excess of the 18% fee requested by counsel at that time:

| Case | Approx. Size of Fund/Recovery | Fee Percentage Awarded |
|------|-------------------------------|------------------------|
| *Microstrategy II* (E.D. Va. 2001) | $152,500,000-$192,500,000 | 18% |
| *Jones* (S.D.W. Va. 2009) | $40,000,000-50,000,000 | 20% |
| *Muhammad* (S.D.W. Va. 2008) | $700,000 | 33.3% |
| *In re SPX Corp. ERISA Litig.* (W.D.N.C. 2007) | $3,600,000 | 28% |
| *Smith v. Krispy Kreme Doughnut Corp.* (M.D.N.C. Jan. 10, 2007) | $4,7500,000 | 28% |
| *Mason v. Abbot Labs.*, (N.D.W. Va. 2001) | $1,705,000 | 25% |
| *Braun v. Culp, Inc*., (M.D.N.C. 1985) | $1,500,000 | 25% |
| *In re Rite Aid Corp. Sec. Litig.* (E.D. Pa. 2005) | $126,641,315 | 25% |
| *In re Deutsche Telekom AG Sec. Litig.*, (S.D.N.Y 2005) | $120,000,000 | 28% |
| *In re Xcel Energy Inc. Sec., Derivative & "ERISA" Litig.* (D. Minn. 2005) | $80,000,000 | 25% |
| *In re Freddie Mac. Sec. Litig.*, (S.D.N.Y. Oc. 27, 2006) | $410,000,000 | 20% |
| *In re Sunbeam Sec. Litig.*, (S.D. Fla. 2001) | $110,000,000 | 25% |
| *In re Bankamerica Corp. Sec. Litig.*, (E.D. Mo. 2002) | $490,000,000 | 18% |
| *In re DaimlerChrysler A.G. Sec. Litig.*, (D. Del. 2004) | $300,000,000 | 22.5% |
| *In re Rite Aid Corp. Sec. Litig.*, (E.D. Pa. 2001) | $193,000,000 | 25% |
| *In re 3Com Corp. Sec. Litig.*, (N.D. Cal. 2001) | $259,000,000 | 18% |
| *In re IKON Office Solutions, Inc.*, (E.D. Pa. 2000) | $111,000,000 | 30% |

Our analysis expands that chart to set forth an illustrative list of securities class action cases where the settlement fund was at least $75 million and fees over 19% were awarded as a flat percentage of the fund:

| Case | Settlement Amount | Fee Percentage Awarded |
|---|---|---|
| *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-1376-LHK (PSG), slip op. at 1 (N.D. Cal. Nov. 11, 2011)[8] | $125 million | 19.75% |
| *Dusek v. Mattel*, No. 99-CV-10864-MRP (CWx), slip op. at 2 (C.D. Cal. Oct. 1, 2003) | $122 million | 27% |
| *In re Bank One Sec. Litig.*, No. 00-CV-767, slip op. at 3, 12 (N.D. Ill. Sept. 1 2005) | $120 million | 22.50% |
| *Hershey v. Pac. Inv. Mgmt. Co. LLC*, No. 05-cv-04681, slip op. at 7 (N.D. Ill. May 4, 2011) | $118.75 million | 20% |
| *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-CV-3395-JF (PVT), slip op. at 2 (N.D. Cal. Sept. 26, 2008) | $117.5 million | 25% |
| *In re CVS Corp. Sec. Litig.*, No. 01-11464 (JLT), slip op. at 7 (D. Mass. Sept. 8, 2005) | $110 million | 25% |
| *In re DPL Inc. Sec. Litig.*, 307 F. Supp. 2d 947, 954 (S.D. Ohio 2004) | $110 million | 20% |
| *In re AT&T Corp. Sec. Litig.*, No. 00-5364 (GEB), 2005 WL 6716404, at *11 (D.N.J. Apr. 25, 2005) | $100 million | 21.25% |
| *In re Honeywell Int'l Inc. Sec. Litig.*, No. 2:00cv03605 (DRD), slip op. at 1 (D.N.J. Aug. 18, 2004) | $100 million | 20% |
| *In re Am. Express Fin. Adv. Sec. Litig.*, No. 04-Civ.173 (DAB), slip op. at 8 (July 19, 2007) | $100 million | 27% |
| *In re Fleming Cos. Inc. Sec. Litig.*, No. 5-03-MD-1530-(TJW), slip op. at 15 (E.D. Tex. Nov. 30, 2005) | $93.95 million | 23.75% |
| *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *5 (E.D. Pa. July 13, 2007) | $93 million | 23% |
| *In re Boeing Sec. Litig.*, No. C97-1715Z, slip op. at 13 (W.D. Wa. Apr. 11, 2002) | $92.5 million | 25% |
| *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-JFW (VBKx), slip op. at 1-2 (C.D. Cal. Feb. 8, 2010) | $90 million | 25% |

---

[8] All docketed cases cited herein are submitted as part of a compendium of cases annexed as Ex. 14 to the Joint Declaration.

| Case | Settlement Amount | Fee Percentage Awarded |
|------|-------------------|------------------------|
| *Scheiner v. i2 Technologies Inc*., No. 3:01-CV418-H, slip op. at 7 (N.D. Tex. Oct. 1, 2004) ($84.85 million settlement) and slip op. at 8 (N.D. Tex. (May 26, 2005) ($2.9 million settlement) | $87.75 million | 25% |
| *In re FirstEnergy Corp. Sec. Litig*., No. 5:03-CV-1684, slip op. at 1 (N.D. Ohio Jan. 3, 2005) | $84.9 million | 23% |
| *In re Scor Holding (Switzerland) AG Sec. Litig*., No. 04 Civ. 7898 (DLC), slip op. at 2 (S.D.N.Y. Dec. 17, 2008) | $84.6 million | 20% |
| *In re Aetna Inc. Sec. Litig*., No. CIV. A. MDL 121, 2001 WL 20928, at *16 (E.D. Pa. Jan. 4, 2001) | $82.5 million | 30% |
| *In re Priceline.com, Inc. Sec. Litig*., No. 3:00-CV-1884(AVC), 2007 WL 215592, at *5 (D. Conn. July 20, 2007) | $80 million | 30% |
| *In re Moneygram Int'l Inc. Sec. Litig.* No. 08-883 (DSD/JJG), slip op. at 18 (D. Minn. June 18, 2010) | $80 million | 23.75% |
| *In re Philip Servs. Corp. Sec. Litig*., No. 98 Civ. 835(AKH), 2007 WL 959299, at *3 (S.D.N.Y. Mar. 29, 2007) | $79.750 million | 26% |
| *In re Tycom Ltd. Sec. Litig*., No. 03-CV-03540 (GEB)(DEA), slip op. at 8 (D.N.J. Aug. 25, 2010) | $79 million | 33 1/3% |
| *In re Verisign, Inc. Sec. Litig*., No. C-02-2270-JWC(PVT), slip op. at 1 (N.D. Cal. Apr. 24, 2007) | $78 million | 25% |
| *In re St. Paul Travelers Sec. Litig. II,* No. 04-CV-4697-JRT-FLN, slip op. at ¶ 6 (D. Minn. July 24, 2008) | $77 million | 23.5% |
| *In re Krispy Kreme Doughnuts, Inc. Sec. Litig*., No. 1:04CV00416, slip op. at 1 (M.D.N.C. Feb. 15, 2007) | $75 million | 23.5% |
| *Irvine v. Imclone Systems Inc*., No. 02-cv-109-RO, slip op. at 1 (S.D.N.Y. Aug. 3, 2005) | $75 million | 22.2% |

Plaintiff's Counsel respectfully submit that the cases cited above demonstrate that the requested fee of 19.5% of the Settlement Amount is below the range of fees awarded by courts in the Fourth Circuit, and across the country, in comparable cases and should be approved.

        **(h)**     **The Undesirability of the Case and the Nature/Length of the Professional Relationship Between Attorney and Client Both Support the Requested Fee (*Barber* Factors Ten and Eleven)**

The tenth *Barber* factor (undesirability of the cases within the legal community) also weighs in favor of the fee requested.  Demonstrating the undesirability of this Action is the fact that only three lead plaintiff applications were filed, suggesting a relatively low level of interest in bringing this highly complicated Action, under a demanding and expedited schedule, against a formidable adversary.  Further, representing plaintiffs in securities class action litigation with the knowledge that counsel may never be compensated may not be desirable to any but the most experienced and specialized counsel.  Finally, the eleventh *Barber* factor (nature and length of the professional relationship between the attorney and client) also supports the requested fee as Class Counsel has experience representing Ontario Teachers' for nearly a decade in a number of matters in which it has served, and sought to serve, as a representative plaintiff and class representative.  Joint Decl. ¶ 185.

        **2.**     **The Requested Fee Was Negotiated with Class Representative and Is Presumptively Reasonable**

In enacting the PSLRA, Congress intended to encourage sophisticated institutional investors with substantial financial stakes in a litigation to serve as plaintiffs and to play an active role in supervising and directing the litigation, including selecting and monitoring counsel. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 261-62, 282 (3d Cir. 2001).  Approval of Class Counsel's fee request by Class Representative, who was appointed under the PSLRA to represent the interests of the class, strongly supports approval of the requested fee.  *See, e.g., Mills*, 265 F.R.D. at 261 ("a PSLRA case in which a fee request has been approved and endorsed by properly-appointed lead plaintiffs . . . . enjoys a presumption of reasonableness").

Here, Class Representative, Ontario Teachers', is the single largest profession pension plan in Canada, representing approximately 303,000 active and retired teachers in Ontario. *See* Ex. 2 ¶ 2. It has served as Lead Plaintiff in five other matters and, including this Settlement, has recovered almost $2 billion on behalf of class members. *Id*. ¶ 7. Class Representative was substantially involved in the prosecution of the Action and has had direct involvement from its commencement through settlement. *See id*. ¶¶ 5-6, 17-22 . Based on this involvement, Class Representative evaluated the Fee and Expense Application, and believes that it is fair and reasonable and warrants approval by the Court. *Id*. ¶¶ 13-15.

### 3.     The Requested Fee Is also Reasonable under the Lodestar Method

As noted above, the lodestar is calculated by "first determin[ing] the hours reasonably expended by counsel that created, protected or preserved the fund." *MicroStrategy*, 172 F. Supp. 2d at 786. "Then, the number of compensable hours is multiplied by a reasonable hourly rate for the attorneys' services to produce a lodestar figure." *Id*. *See also Mills*, 265 F.R.D. at 264 ("To apply the lodestar method, the Court determines the attorneys' fees award by multiplying the number of hours reasonably worked by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer."). As discussed below, the hourly billing rates used by Labaton Sucharow and Patton Boggs are commensurate with rates used by securities class action attorneys nationwide litigating matters of a similar magnitude.

Here, Labaton Sucharow and Patton Boggs spent an aggregate of more than 34,457.05 hours on the prosecution and resolution of the Action. *See* Joint Decl. ¶ 183, Exs. 8 - A & 9 - A. As set forth in the Fonti Declaration, in submitting its lodestar for the Court's consideration, Labaton Sucharow removed time recorded for hearings before the Court or for depositions other than the time recorded by the lead attorney. *See* Fonti Decl. Ex. 8 ¶ 3. Class Counsel also

excluded from its lodestar submissions time recorded by attorneys who recorded fewer than 50 hours on the matter and professional staff who recorded fewer than 75 hours on the matter. *Id.*

With respect to billing rates, the hourly billing rates of Class Counsel range from $750 to $975 for partners, $725 for Of Counsel, and $325 to $665 for other attorneys. *See* Ex. 8 - A. Defense firm billing rates, including the firm representing Defendants in this Action, gathered and analyzed by Labaton Sucharow from bankruptcy court filings in 2012, in many cases exceeded these rates. *See* Ex. 11. It is respectfully submitted that the reasonableness of Counsel's rates is further supported by the 2012 National Law Journal (NLJ) survey detailing the billable rates for partners and associates across the country. Joint Decl. ¶¶ 181-182.

In *MicroStrategy*, this Court noted that although the hourly rates charged by counsel are high for the locality, they are "within the range of reasonableness for PSLRA cases, where the market or class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials." 172 F. Supp. 2d at 788. The Court in *MicroStrategy* further noted that the rates of counsel "generally corresponds to the rates charged by the group of experienced securities class counsel in cases brought in this and other districts" and are "not inconsistent with the rates charged by lawyers in large, prominent, and as here, expert law firms that typically represent defendants in securities class actions." 172 F. Supp. 2d at 788.

The total lodestar amount for Labaton Sucharow and Patton Boggs – which is derived by multiplying their hours by each firm's hourly rates for attorneys, paralegals, and other professional support staff – is $16,031,271.25. Accordingly, the requested 19.5% fee, which amounts to $19,012,500, represents a modest multiplier of less than 1.2 times Counsel's lodestar. Joint Decl. ¶ 183.

Such a multiplier is well within the parameters used throughout the Fourth Circuit and is

additional evidence that the requested attorneys' fee is reasonable.  *See e.g., MicroStrategy*, 172

F. Supp. 2d at 790 (awarding 2.6 multiplier); *Domonoske*, 790 F. Supp. 2d at 476 (awarding 1.8

multiplier); *Jones*, 601 F. Supp. 2d at 766 (awarding multiplier between 3.4 and 4.3);  *Royal*

*Ahold*, 461 F. Supp. 2d at 387 (awarding 2.57 multiplier).  Indeed, courts "have generally held

that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."

*Mills*, 265 F.R.D. at 265; *Jones*, 601 F. Supp. 2d at 766 (same).

### III.     COUNSEL SHOULD BE PAID FOR LITIGATION EXPENSES REASONABLY INCURRED IN CONNECTION WITH THIS ACTION

In addition to a reasonable attorneys' fee, Class Counsel respectfully seeks payment in

the amount of $3,064,815.86 for litigation expenses reasonably incurred in connection with

prosecuting the claims against Defendants.  These expenses are set forth in the individual firm

declarations from counsel submitted herewith as Exs. 8 and 9 and are of the type generally

approved by courts for reimbursement.  *See MicroStrategy*, 172 F. Supp. 2d at 791 ("There is no

doubt that costs, if reasonable in nature and amount, may appropriately be reimbursed from the

common fund.").  Counsel's declarations itemize the various categories of expenses incurred (*see*

Exs. 8-B & 9-B).  These expenses were reasonable and necessary to prosecuting the claims and

achieving the Settlement.  Joint Decl. ¶¶ 190-198.[9]

The most significant expense was the cost of experts, which totaled $2,259,689.89, or

almost 75% of all litigation expenses.  In addition to the three expert reports prepared and

utilized in the class certification stage (*see* Joint Decl. ¶ 31 ), the Parties employed experts in

their primary case presentations to opine and assist on such areas concerning materiality, market

efficiency, causation, damages, accounting, and internal controls.  *Id*. ¶¶ 85-101.  For example,

---

[9] Ms. Podolsky's expenses have been paid by Labaton Sucharow and are reflected within the
Fonti Declaration.  Ex. 10 ¶ 3 - A & Ex. 8 - B.

Class Counsel retained Chad Coffman, CFA, to provide his expert opinion as to: (a) the materiality of Defendants' alleged misrepresentations and omissions; (b) whether and to what degree investor losses were proximately caused by Defendants' alleged violations of the federal securities laws; (c) the alleged damages suffered by class members on a per share basis under Section 10(b) of the Exchange Act; and (d) the efficiency of the market for CSC common stock. Class Counsel also retained Douglas Carmichael, Ph.D. to provide an expert opinion regarding (a) the effectiveness of CSC's internal control over financial reporting; (b) the opinions and certifications expressed by CSC and its management regarding CSC's disclosure controls and procedures; and (c) the propriety of CSC's accounting for the NHS Contract in accordance with generally accepted accounting principles (GAAP). *See id.* ¶¶ 86-89. Additionally, Class Counsel relied extensively on two industry consultants, Dr. Joanne Spetz and Dr. Steve Parente, to help interpret information in Defendants' document production as to the technical and operational feasibility of CSC's efforts to implement the NHS Contract for healthcare provider use at healthcare facilities within the United Kingdom. *Id.* ¶¶ 100-101.

Class Counsel received crucial advice and assistance from these experts throughout the course of the Action, from drafting the Consolidated Complaint through the prolonged mediation process, and into trial preparation. Class Counsel utilized these experts and consultants in order to efficiently frame the issues, gather relevant evidence, make a realistic assessment of provable damages, and structure a resolution of the Action. *See, e.g., MicroStrategy*, 172 F. Supp. 2d at 791 (approving costs where half of the reported costs were for expert witness and consultant fees and expenses and noting that the expenses are "reasonable in a case with this level of complexity" and "bear a reasonable relationship to the time and effort expended and the result achieved"); *Jones*, 601 F. Supp. 2d at 767 (approving costs incurred by experts and consultants

who "were necessary to the thorough development and effective settlement of the Class Claims, especially in light of the complicated subject matter").

Another substantial component of the expenses, $263,776.24, related to travel, business transportation, and meals.  Class Counsel was required to consistently travel between New York and Virginia to attend hearings, status conferences and depositions.  In addition, Plaintiff's Counsel took and defended 32 depositions in 11 cities throughout the United States and in London, England and seek payment for the costs of this travel as well.  *See* Joint Decl. ¶ 194, Exs. 8-B & 9-B.  *See, e.g., MicroStrategy*, 172 F. Supp. 2d at 791 (approving costs which include expenditures for "travel, meals, and lodging"); *Mills*, 265 F.R.D. at 265 ("traveling to depositions, reviewing documents provided by class counsel, and attending mediation sessions and court hearings" are the type of expenses expected or previously approved by other courts).

Another large area of expense relates to establishing and utilizing an electronic discovery database for document review and production, which totals $214,057.03—significantly less than even one hardcopy set of the 5 million page production.  An outside vendor, Merrill, provided Lextranet discovery software and created a database, which was crucial for collecting, organizing, and enabling the efficient review of the electronic discovery.  Using Lextranet allowed Class Counsel to coordinate the review of over five million pages of documents among attorneys, consultants, and experts.  *See* Joint Decl. ¶ 195, Ex. 8 - B.

The Settlement Notice advised potential Settlement Class Members that Class Counsel would seek reimbursement of litigation expenses of no more than $3.35 million.  Ex. 7 - A at 2. The expenses sought here are well below this "cap" and should be awarded.

IV.   **CLASS REPRESENTATIVE IS ENTITLED TO
REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES,
INCLUDING LOST WAGES, PURSUANT TO THE PSLRA**

The PSLRA, 15 U.S.C. §78u-4(a)(4), limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Congress specifically acknowledged the importance of awarding appropriate reimbursement to class representatives. *See* H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognized that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the court discretion to award fees.")

Here, Class Representative, Ontario Teachers', seeks reimbursement of its reasonable costs and expenses incurred directly in connection with its representation of the Settlement Class in the total amount of $60,905.70. The extensive amount of time and effort devoted to the Action by Class Representative is detailed in the accompanying Harnish Declaration, annexed as Ex. 2 to the Joint Declaration. Specifically, Class Representative seeks $28,881 in lost wages related to the five employees who spent more than 300 hours supervising and prosecuting the Action. Joint Decl. ¶¶ 199, Ex. 2 ¶¶ 16-23. It also seeks $32,024.70 in reimbursement for expenses primarily related to traveling in connection with the case, such as to hearings and depositions. *Id.*

Numerous cases have approved reasonable payments to compensate class representatives for their time and effort, including Ontario Teachers'. *See, e.g.*, *In re Bristol-Myers Squibb Co. Sec. Litig.*, No 07-5867, slip op. (S.D.N.Y. Dec. 8, 2009) (awarding Ontario Teachers'

$19,680.47); *Mills*, 265 F.R.D. at 265 (awarding lead plaintiffs $42,419.50); *In re Gilat Satellite Networks, Ltd*., No. CV-02-1150 (CPS) (SMG), 2007 WL 2743675, at *18-19 (E.D.N.Y. Sept. 18, 2007) (awarding lead plaintiff $10,000); *In re WorldCom, Inc. Sec. Litig*., 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) (awarding $11,063.54 to lead plaintiff).  Indeed, given that the central objective of the PSLRA was to "protect[] investors who join class actions against lawyer-driven lawsuits by . . . increas[ing] the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel," (*In re Cavanaugh*, 306 F.3d 726, 737 (9th Cir. 2002)), it would be unreasonable to penalize institutional class plaintiffs, like Lead Plaintiff here, for devoting time to the litigation by denying them reimbursement.  *See also In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (recognizing the important public policy role of lead plaintiffs).

Here, Class Representative has devoted more than 300 hours to the Action, which included time spent on the following: (a) conferring with Class Counsel concerning all major litigation strategy decisions for the prosecution of the Action; (b) reviewing all major motions, pleadings, and correspondence prior to their submission, and providing comments and analysis as needed; (c) responding to discovery requests propounded by Defendants, including sitting for depositions and reviewing Ontario Teachers' document production of thousands of pages of materials; (d) considering discovery requests propounded by Class Counsel, (e) attending numerous hearings before the Court, including those concerning Defendants' motion to dismiss, the class certification motion, and the pretrial conference; (f) reviewing regular reports from Class Counsel concerning the work being performed; (g) analyzing trial preparation research and materials assembled by Class Counsel; and (h) participating in the settlement negotiations that

occurred during the course of the litigation and those that ultimately led to the agreement in principle to settle the Action, including the mediation that took place on January 23, 2013 and the settlement conference on April 16 and 17, 2013. *See* Ex. 2 ¶¶ 16-23. Class Counsel and Class Representative therefore respectfully submit that the $60,905.70 sought, based on Class Representative's extensive involvement in the Action from inception to settlement, is reasonable and should be granted.

## V.      CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that this Court award attorneys' fees of 19.5% of the Settlement Fund, payment of litigation expenses in the amount of $3,064,815.86, and reimbursement of Class Representative's expenses in the amount of $60,905.70. A proposed order will be submitted with Class Counsel's reply papers after the deadline for objections has passed.

Dated:  August 15, 2013

Respectfully submitted,

/s/ Benjamin G. Chew

**PATTON BOGGS LLP**

Benjamin G. Chew (VSB#29113)
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6015
Facsimile: (202) 457-6315
Email: bchew@pattonboggs.com

**LABATON SUCHAROW LLP**

Jonathan M. Plasse (admitted *pro hac vice*)
Joseph A. Fonti (admitted *pro hac vice*)
Javier Bleichmar (admitted *pro hac vice*)
Dominic J. Auld (admitted *pro hac vice*)
Serena Hallowell (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7044

*Counsel for Class Representative
Ontario Teachers' Pension Plan Board and
the Proposed Settlement Class*

*Counsel for Class Representative Ontario
Teachers' Pension Plan Board and
the Proposed Settlement Class*

Susan R. Podolsky, Esq. (VSB#27891)
1800 Diagonal Road
Suite 600
Alexandria, VA 22314
Telephone: (571) 366-1702
Email: susanpodolsky@verizon.net

*Counsel for Class Representative*
*Ontario Teachers' Pension Plan Board*

## GLOSSARY OF DEFINED TERMS

| Term | Definition |
|------|------------|
| "Action" | The civil action captioned *In re Computer Sciences Corporation Securities Litigation,* Civ. No. 11-610-TSE-IDD, pending in the United States District Court for the Eastern District of Virginia before the Honorable T.S. Ellis, III. |
| "Alternative Judgment" | A form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in the Stipulation and where none of the Parties hereto elects to terminate this Settlement by reason of such variance. |
| "Appendix 1" | List of valid and timely requests for exclusion received in response to the Class Notice, or as amended by agreement of Class Counsel and Defendants' Counsel (ECF 309-1). |
| "Authorized Claimant" | A Settlement Class Member who timely submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment by the Court. |
| "Certified Class" | Previously certified class of all persons or entities that purchased or acquired Computer Sciences Corporation common stock between August 5, 2008 and August 9, 2011, inclusive, and who were damaged thereby.  Excluded from the Certified Class are: (i) the Defendants; (ii) members of the immediate family of any Defendant; (iii) any person who was an officer or director of CSC during the Class Period; (iv) any firm, trust, corporation, officer, or other entity in which any Defendant has or had a controlling interest; (v) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party; and (vii) any Person with an accepted request for exclusion as set forth on Appendix 1. |
| "Certified Class Member" | A person or entity that is a member of the Certified Class. |
| "Claims Administrator" | GCG, Inc., the firm retained by Class Counsel, subject to Court approval, to provide all notices approved by the Court to Settlement Class Members, to process proofs of claim and to administer the Settlement. |
| "Class Counsel" | Law firm of Labaton Sucharow LLP. |

| "Class Notice" | Notice previously authorized by the Court's March 15, 2013 Order, which was made in accordance with that Order. |
|---|---|
| "Class Period" | Period between August 5, 2008 and August 9, 2011, inclusive. |
| "Class Representative" | Ontario Teachers' Pension Plan Board. |
| "Consolidated Complaint" | On September 26, 2011, Ontario Teachers' filed a Consolidated Class Action Complaint for Violations of the Federal Securities Laws, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934; on October 19, 2011, Ontario Teachers' filed a Corrected Consolidated Class Action Complaint for Violations of the Federal Securities Laws. |
| "Court" | United States District Court for the Eastern District of Virginia. |
| "Defendants" | CSC, Michael W. Laphen, and Donald G. DeBuck. |
| "Defendants' Counsel" | Law firm of Skadden, Arps, Slate, Meagher & Flom LLP. |
| "Distribution Order" | Order of the Court approving the Claims Administrator's determinations concerning the acceptance and rejection of the claims submitted and approving any fees and expenses not previously paid, including the fees and expenses of the Claims Administrator and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants. |
| "Effective Date" | Date upon which the Settlement shall become effective, as set forth in ¶ 39 of the Stipulation. |
| "Escrow Account" | Separate escrow account designated by Class Counsel at one or more national banking institutions into which the Settlement Amount will be deposited for the benefit of the Settlement Class. |
| "Escrow Agent" | Class Counsel. |
| "Excluded Settlement Class Member" | Any Person with an accepted request for exclusion as set forth on Appendix 1 (ECF 309-1) who does not opt back into the Settlement Class in accordance with the requirements set forth in the Settlement Notice; (ii) a member of the Settlement Class who only purchased or acquired shares during the Extended Class Period, but who submits a valid and timely request for exclusion in accordance with the requirements set forth in the Settlement Notice; and (iii) a member of the Settlement Class who purchased or acquired shares during the Class Period and the Extended Class Period, but who properly excludes the shares purchased during the Extended Class Period by submitting a |

| | valid and timely request for exclusion of those Extended Class Period shares in accordance with the requirements set forth in the Settlement Notice. |
|---|---|
| "Extended Class Period" | Period between August 10, 2011 and December 27, 2011, inclusive. |
| "Final" | With respect to a court order, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a *writ of certiorari* and, if *certiorari* is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on *certiorari* to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for *certiorari* from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought).  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation of the Net Settlement Fund, or to the Court's award of attorneys' fees or expenses, shall not in any way delay or affect the time set forth above for the Judgment or Alternative Judgment to become Final, or otherwise preclude the Judgment or Alternative Judgment from becoming Final. |
| "Former Individual Defendant" | Michael J. Mancuso. |
| "Fourth Circuit" | United States Court of Appeals for the Fourth Circuit. |
| "Individual Defendants" | Michael W. Laphen and Donald G. DeBuck. |
| "Judgment" | Proposed judgment to be entered approving the Settlement substantially in the form attached as Exhibit B to the Stipulation (ECF 309-1). |
| "Local Counsel" | Patton Boggs LLP. |
| "Net Settlement Fund" | The Settlement Fund less: (i) Court-awarded attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court, including any award to Class Representative for reasonable costs |

| | and expenses (including lost wages) pursuant to the PSLRA. |
|---|---|
| "Notice and Administration Expenses" | All costs, fees, and expenses incurred in connection with providing notice to the Certified Class, notice to the Settlement Class, and administering the Settlement, including but not limited to: (i) providing notice to the Certified Class and Settlement Class by mail, publication, and other means; (ii) receiving and reviewing claims; (iii) applying the Plan of Allocation; (iv) communicating with Persons regarding the proposed Settlement and claims administration process; (v) distributing the proceeds of the Settlement; and (vi) fees related to the Escrow Account and investment of the Settlement Fund. |
| "Party" or "Parties" | The Defendants and Class Representative, on behalf of itself and the other Settlement Class Members. |
| "Person" or "Persons" | Any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity. |
| "Preliminary Approval Order" | The Preliminary Approval Order Providing for Notice and Hearing in Connection with Proposed Class Action Settlement entered by the Court on May 24, 2013. |
| "Proof of Claim" | The Proof of Claim and Release form for submitting a claim, which was approved by the Court. |
| "PSLRA" | Private Securities Litigation Reform Act of 1995. |
| "Released Claims" | Any and all claims, rights, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, including both known claims and Unknown Claims (defined below), whether arising under federal, state, foreign or statutory law, common law or administrative law, or any other law, rule or regulation, whether fixed or contingent, accrued or not accrued, matured or unmatured, liquidated or un-liquidated, at law or in equity, whether class or individual in nature, that Class Representative or any other Settlement Class Member: (i) asserted in the Action; or (ii) could have asserted in the Action or any other action or in any forum, that arise out of, relate to, or are in connection with the claims, allegations, transactions, facts, events, acts, disclosures, statements, |

| | |
|---|---|
| | representations or omissions or failures to act involved, set forth, or referred to in the complaints filed in the Action and that relate to the purchase or acquisition of the publicly traded common stock of CSC during the Settlement Class Period.<br><br>For the avoidance of doubt, Released Claims do not include: (i) claims to enforce the Settlement; (ii) claims in *Che Wu Hung v. Michael W. Laphen, et al.*, CL 2011 13376 (Circuit Court of Fairfax Cty, Virginia), *Judy Bainto v. Michael W. Laphen, et al.*, No. A-12-661695-C (District Court, Clark Cty, Nevada), *Daniel Himmel v. Michael W. Laphen, et al.*, No. A-12-670190-C (District Court, Clark Cty, Nevada), and *Shirley Morefield v. Irving W. Bailey, II, et al.*, No. 1:120V1468GBL/TCB (E.D. Va.); and (iii) any governmental or regulatory agency's claims in, or any right to relief from, any criminal or civil action against any of the Released Defendant Parties. |
| "Released Defendant Parties" | The Defendants, the Former Individual Defendant, their past or present or future subsidiaries, parents, affiliates, principals, successors and predecessors, assigns, officers, directors, shareholders, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, auditors, insurers; the spouses, members of the immediate families, representatives, and heirs of the Individual Defendants or the Former Individual Defendant, as well as any trust of which any Individual Defendant or Former Individual Defendant is the settlor or which is for the benefit of any of their immediate family members; and any firm, trust, corporation, or entity in which any Defendant or Former Individual Defendant has a controlling interest; and any of the legal representatives, heirs, successors in interest or assigns of the Defendants or the Former Individual Defendant. |
| "Released Defendants' Claims" | All claims, including both known claims and Unknown Claims (as defined below), whether arising under federal, state, common or administrative law, or any other law, that the Defendants could have asserted against any of the Released Plaintiff Parties that arise out of or relate to the commencement, prosecution, or settlement of the Action (other than claims to enforce the Settlement). |
| "Released Parties" | The Released Defendant Parties and the Released Plaintiff Parties. |

| | |
|---|---|
| "Released Plaintiff Parties" | Each and every Settlement Class Member, Class Representative, Class Counsel, Local Counsel, and their respective past, current, or future trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, parents, subsidiaries, divisions, joint ventures, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Released Plaintiff Party who is an individual, as well as any trust of which any Released Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members.  Released Plaintiff Parties does not include any Excluded Settlement Class Member. |
| "Settlement" | The resolution of the Action as against the Defendants in accordance with the terms and provisions of this Stipulation. |
| "Settlement Amount" | The total principal amount of ninety-seven million five hundred thousand dollars ($97,500,000) in cash.  For the avoidance of doubt, under no circumstances shall the total to be paid by the Defendants pursuant to the Stipulation exceed the Settlement Amount. |
| "Settlement Class" | All persons or entities that purchased or acquired Computer Sciences Corporation common stock during the Settlement Class Period, and who were allegedly damaged thereby.  Excluded from the Settlement Class are: (i) the Defendants; (ii) members of the immediate family of any Defendant; (iii) any person who was an officer or director of CSC during the Settlement Class Period; (iv) any firm, trust, corporation, officer, or other entity in which any Defendant has or had a controlling interest; (v) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party; and (vii) any Excluded Settlement Class Member. |
| "Settlement Class Member" | A person or entity that is a member of the Settlement Class. |
| "Settlement Class Period" | The period between August 5, 2008 and December 27, 2011, inclusive. |
| "Settlement Fund" | The Settlement Amount and any interest earned thereon. |

| "Settlement Hearing" | Hearing to be held by the Court to determine whether the proposed Settlement is fair, reasonable, and adequate and should be approved. |
| --- | --- |
| "Settlement Notice" | Notice of Proposed Settlement of Class Action, Extended Class Period, and Motion for Attorneys' Fees and Expenses, which was approved by the Court and sent to Settlement Class Members. |
| "Stipulation" | Stipulation and Agreement of Settlement made and entered into by and between the Class Representative on behalf of itself and all members of the Certified Class and proposed Settlement Class, and the Defendants, entered on May 15, 2013 (ECF 309-1). |
| "Summary Settlement Notice" | The Summary Notice of Proposed Settlement of Class Action, Extended Class Period, and Motion for Attorneys' Fees and Expenses for publication which was approved by the Court. |
| "Taxes" | All federal, state, or local taxes of any kind on any income earned by the Settlement Fund and reasonable expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants). |

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August 2013, I will electronically file the

foregoing with the Clerk of the Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

David E. Carney
Jennifer L. Spaziano
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
David.Carney@skadden.com
Jen.Spaziano@skadden.com

*Counsel for Defendants*

Elizabeth Kathleen Tripodi
Levi Korsinsky
1050 30th St NW
Washington, DC 20007
etripodi@zlk.com

*Counsel for Plaintiff Hilary Kramer*
*(Case No. 1:11-cv-00751)*

Jay B. Kasner
Scott D. Musoff
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Jay.Kasner@skadden.com
Scott.Musoff@skadden.com

*Counsel for Defendants*

 /s/ Benjamin G. Chew
Benjamin G. Chew (VSB#29113)
**PATTON BOGGS LLP**
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6015
Facsimile: (202) 457-6315
Email: bchew@pattonboggs.com

*Counsel for Ontario Teachers' Pension Plan*
*Board and Local Counsel for the Proposed*
*Settlement Class*