# Exhibit 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| | ) |
| IN RE COMPUTER SCIENCES | ) CIV. A. No. 1:11-cv-610-TSE-IDD |
| CORPORATION SECURITIES | ) |
| LITIGATION | ) |
| | ) |

**<u>DECLARATION OF CHAD COFFMAN, CFA IN FURTHER SUPPORT OF</u>**
**<u>CLASS ACTION SETTLEMENT AND</u>**
**<u>THE PROPOSED PLAN OF ALLOCATION</u>**

## I.    INTRODUCTION

1.      My name is Chad Coffman. I am the President of Global Economics Group, a Chicago-based firm that specializes in the application of economics, finance, statistics, and valuation principles to questions that arise in a variety of contexts, including, as here, in the context of litigation.

2.      I served as the Lead Plaintiff's testifying expert in this matter on topics including loss causation and damages. I also provided analyses in the context of mediation and settlement discussions in this matter. In addition, after the proposed settlement was reached, I was asked by counsel for the Lead Plaintiff to assist with the design of the plan to allocate the settlement proceeds (the "Plan of Allocation" or "Plan") among Settlement Class Members who submit valid Proof of Claim forms that are approved for payment by the Court ("Authorized Claimants").

3.      I have been asked by Lead Counsel for Lead Plaintiff ("Counsel") to provide relevant facts to consider in evaluating whether the proposed settlement in *In re Computer Sciences Corporation Securities Litigation* is fair and reasonable. In particular, Counsel asked me to describe and quantify the potential damages that resulted from Defendants' alleged fraudulent conduct under the assumption that the finder of fact had adopted my views with respect to loss causation and damages, or in the alternative, had adopted some or all of the positions advocated by Defendants and their expert. I have also been asked to describe how the proposed settlement compares to those potential outcomes. Furthermore, I have been asked to address whether the Plan of Allocation is based upon a fair and reasonable methodology.

## II.    QUALIFICATIONS

4.      I hold a Bachelor's Degree in Economics with Honors from Knox College and a Master's in Public Policy from the University of Chicago. I am also a CFA charter-holder. The CFA, or Chartered Financial Analyst, designation is awarded to those who have sufficient practical experience and complete a rigorous series of three exams over three years that cover a wide variety of financial topics including financial statement analysis and valuation.

5.      I, along with several others, founded Global Economics Group in March 2008.[1] Prior to founding Global Economics Group, I was employed by Chicago Partners for over twelve years where I was responsible for conducting and managing analysis in a wide variety of areas including securities valuation and damages, labor discrimination and antitrust. I have been engaged numerous times as a valuation expert both within and outside the litigation context. My experience in class action securities cases includes work for plaintiffs, defendants, and D&O insurers. As a result of my experience, much of my career has been spent analyzing how quickly, reliably, and the degree to which, new information impacts securities prices.

6.       In addition to having served as a consulting or testifying expert for specific interested parties in class action securities matters, I have also been hired in numerous class action securities matters (approximately two dozen) by Judge Daniel Weinstein (Ret.) as a neutral expert in the context of mediation. Judge Weinstein is a well-respected and prominent mediator who is a Harvard Law graduate, served as a Judge on the San Francisco Superior Court from 1982-1988, and was Associate Justice Pro Tem, California Supreme Court and the First District Court of Appeal, in 1984. He has served as mediator on numerous cases involving the world's largest companies such as Enron and Adelphia, and teaches and lectures to fellow

---

[1] Global Economics Group was formerly known as Winnemac Consulting, LLC.

2

mediators and lawyers throughout the United States. In assisting Judge Weinstein in these

mediations as a neutral expert, I carefully scrutinize the expert analyses of both plaintiffs and

defendants, and provide views regarding the strengths and weaknesses on both sides, among

other things. My role in these cases must be agreed to by each of the parties and I believe speaks

to the credibility I have among the plaintiffs, defense, and insurance bars. As a result of serving

as a neutral economist for Judge Weinstein and being directly involved in the negotiating process

in many cases, I have substantial experience in understanding the process by which cases such as

this are valued, negotiated, and often settled by all relevant parties, as well as the risks the parties

face by failing to reach agreement.

7.      My qualifications are further detailed in my curriculum vitae, which is attached as

**Appendix A**.

## III.    MAXIMUM DAMAGES PER SHARE

8.      On March 25, 2013, I submitted a report in which I offered my opinion regarding

the damages resulting from Lead Plaintiff's allegations assuming it prevailed on liability.[2]

Generally speaking, damages in matters such as this are based upon the losses suffered by

investors that are proximately caused by the alleged fraud. In order to suffer damages, an

investor must purchase the security after misrepresentations/omissions have occurred and then

continue to hold the security through at least one disclosure that: (1) partially or fully corrected

the misrepresentations/omissions; *and* (2) caused the security price to decline as a result.

Financial economists engaged to calculate damages typically conduct what is known as an

"event study" to quantify the price declines that are caused by the release of corrective

---

[2] "Expert Report of Chad Coffman, CFA in Reply to the Expert Report of Dr. Vinita M. Juneja Dated March 13, 2013," March 25, 2013 ("Coffman Reply Report" or my "Reply Report") at ¶103.

information after separating out any price movement caused by market, industry, or confounding factors.[3] These price declines that are caused by the release of corrective information then form the basis for the amount of "artificial inflation" that existed in the price of the security prior to the release of the corrective information.

9.      In this matter, I concluded that corrective information was released in a series of partial corrective disclosures. I opined that the events upon which corrective information was revealed and artificial inflation in the market price of CSC was revealed (and the per share amount on each day) can be summarized as follows:

| TABLE 1 | |
|---|---|
| Market Date | Estimated Price Decline After Controlling for Market, Industry, and Confounding Factors |
| 4/1/2010 | $0.95 |
| 11/10/2010 | $0.55 |
| 2/9/2011 | $3.40 |
| 5/3/2011 | $2.95 |
| 5/26/2011 | $3.05 |
| 8/10/2011 | $0.00 |
| 12/27/2011 | $2.33 |
| Total:[4] | $13.25 |

10.    The table above summarizes that, according to the analysis in my Reply Report, there was a total of $13.25 in artificial inflation revealed as a result of all of the corrective disclosures. This represents the damages per share for an investor that purchased shares during the Settlement Class Period (prior to the first corrective disclosure) and then held those shares

---

[3] The event study also determines the confidence level at which random price movement can be excluded as the cause of the movement in the security price. I adopted a 90% confidence level as the threshold for considering the price movement "statistically significant" and thus large enough to include in the damages analysis.

[4] Coffman Reply Report at ¶103. Reported figures may not sum to the total due to rounding.

4

through all of the corrective disclosures. For investors that purchased shares during the

Settlement Class Period and held the shares through a subset of the corrective disclosures,

damages are limited to the price declines caused by the release of corrective information that

occurred while they held the stock, which could result in damages far less than $13.25 per share.[5]

Finally, for investors that purchased shares during the Settlement Class Period and sold the

shares prior to the first corrective disclosure or purchased and sold shares between corrective

disclosures without holding through a corrective disclosure ("in and out traders"), damages are

zero.

       11.    Another way to summarize this commonly-accepted damages approach (which is

also referred to as the "constant dollar" approach) is to construct an implied "inflation per share"

at each point during the Settlement Class Period. Starting from the total artificial inflation

revealed over the Settlement Class Period of $13.25 per share, as partial corrective disclosures

are made, the inflation per share remaining in the security falls, until it reaches $0.00 after the

final corrective disclosure. Table 2 shows the resulting inflation per share in CSC common stock

during the Settlement Class Period.

| TABLE 2 | |
| --- | --- |
| **Date Range** | **Inflation Per Share** |
| August 5, 2008 – March 30, 2010 | $13.25 |
| April 1, 2010 – November 9, 2010 | $12.30 |
| November 10, 2010 – February 8, 2011 | $11.74 |
| February 9, 2011 – May 2, 2011 | $8.34 |
| May 3, 2011 – May 25, 2011 | $5.39 |
| May 26, 2011 – December 26, 2011 | $2.33 |

---

[5] For example, an investor who purchased on 2/5/11 and sold on 5/5/11 held over two events where corrective information was released (2/9/11 and 5/3/11). As a result, that investor's damages would be $6.35 per share (the sum of the price declines caused by corrective information on those two events).

12.     Damages for any given Class Member can then simply be calculated as the inflation at time of purchase minus the inflation at time of sale (or just the inflation at time of purchase if they held their shares to the end of the Settlement Class Period).

13.     I was not asked to opine, and did not provide an opinion in any of my reports,[6] regarding how many shares would be damaged in the aggregate or the average amount of damages per share if the finder of fact adopted my inflation per share for purposes of damages. However, while assisting Counsel in the context of their settlement discussions—and for settlement purposes only—I was asked to provide an estimate of the number of affected shares and the average damages per share.[7]

14.     To arrive at such an estimate, I used a standard model often applied by experts in the context of settlement discussions for estimating damages, commonly referred to as the "institutional/two-trader" model.[8] This model relies upon quarterly institutional holdings data that institutional investors are required to submit to the Securities and Exchange Commission (SEC) on Forms 13-F. This data accounted for roughly 86-91% of the shares outstanding during the Settlement Class Period.[9] For the small percentage of shares not covered by the institutional

---

[6] Dkt. No. 259-24, "Supplemental Expert Report of Coffman Report, CFA," February 18, 2013 (the "Coffman Report", together with the Coffman Reply Report, my "Reports").

[7] I am aware that some of the information I relay herein was used in connection with settlement discussions. I have provided this declaration at the request of Counsel in order to provide further factual basis for the Court in determining final approval of the proposed settlement. I am not waiving, nor do I intend to waive, any privilege concerning the settlement process in this matter.

[8] *See* Marcia Kramer Mayer, "Best-Fit Estimation of Damaged Volume in Shareholder Class Actions: The Multi-Sector, Multi-Trader Model of Investor Behavior," *NERA*, October 2000.

[9] Coffman Report at ¶65. Using quarterly holdings observations for each institution and making the simplifying assumption that the change in holdings from one quarter to the next occurs pro rata each trading day based on total trading volume (an assumption that is likely not accurate for a given institution, but will be accurate in the aggregate across all institutions), I directly calculated the damages for each individual institution.

6

holdings information, I relied on what is known as the "two-trader" model.[10] This approach to

estimating the number of damaged shares is widely-used in the context of estimating potential

aggregate damages in class action securities cases and was used in similar fashion by

Defendants' expert.

15.     Applying this trading model to the inflation per share, I calculated that

approximately 200.5 million shares of CSC common stock were purchased during the Settlement

Class Period and held through at least one corrective disclosure (and therefore were damaged

pursuant to Section 10(b) of the Exchange Act).[11] On average, each damaged share suffered

damages of $3.51, which corresponds to aggregate damages of approximately $704 million

(200.5 million shares multiplied by $3.51).[12]

## IV.     IMPLIED RECOVERY RATE

16.     Based upon the settlement of $97.5 million and my estimate of 200.5 million

damaged shares, the average recovery is $0.49 per share, which represents 13.9% of the average

damages of $3.51 per share.

---

[10] For a description of this model, *see* Marcia Kramer Mayer, "Best-Fit Estimation of Damaged Volume in Shareholder Class Actions: The Multi-Sector, Multi-Trader Model of Investor Behavior," *NERA*, October 2000, pp. 6-11.

[11] With respect to the Extended Class Period (August 10, 2011-December 27, 2011), I have estimated that damaged shares only represent approximately 15 million or 7.5% of the 200.5 million damaged shares of CSC common stock purchased during the Settlement Class Period and held through at least one corrective disclosure.

[12] This average takes into account that some damaged shares have damages as low as $0.55 per share (if the investor only held over the 11/10/10 corrective disclosure), while others suffered the full $13.25 per share, and many others suffered damages somewhere in between. The average across all of the 200.5 million damaged shares is $3.51. This figure also takes into account estimated offsetting of inflationary "gains" on shares purchased prior to the Settlement Class period and then sold at an inflated price during the Settlement Class Period.

7

17.     However, Defendants and Defendants' expert, Dr. Vinita Juneja, did not concede

that *any* artificial inflation existed on any day and did not agree with my calculations of artificial

inflation per share that would be recoverable if Lead Plaintiff had prevailed in this matter. If this

case had moved to trial, Defendants would likely have argued that Lead Plaintiff could not prove

that any inflation existed at all. In fact, after Dr. Juneja listed some of the assumptions I made in

calculating inflation per share, she stated:

> If the finder of fact determines that any of Mr. Coffman's assumptions are
> incorrect, then the alleged inflation per share calculated by Mr. Coffman would be
> lower than the numbers above (potentially zero).[13]

18.     The Juneja Report provided inflation per share calculations that reflect Dr.

Juneja's estimates of the "maximum" inflation per share, but not necessarily what she considers

the proper measure. Among other differences in our calculations, Dr. Juneja assumed (at the

request of Defendants' Counsel)[14] that declines specifically related to the Nordic Region are not

recoverable due to a prior opinion in the Court, whereas my damage calculations assume that

such declines are recoverable. In addition, Dr. Juneja opined that there was not a statistically

significant decline in CSC's stock price on two of the corrective disclosures I included in my

calculations (April 1, 2010 and November 10, 2010) and consequently she concluded that the

inflation per share on these days was zero.[15] Dr. Juneja further suggested that all of the corrective

disclosures after May 3, 2011 (May 26, 2011, August 10, 2011, November 9, 2011, and

December 27, 2011) were materializations of previously disclosed risks and therefore are not

---

[13] Dkt. No. 259-25, "Expert Report of Vinita M. Juneja, Ph.D.," March 13, 2013 ("Juneja Report") at ¶19.

[14] Juneja Report at ¶4.

[15] Juneja Report at ¶16.

8

recoverable.[16] After taking these arguments into account, Dr. Juneja opined that the "maximum"

inflation per share revealed on each date was as follows:

| TABLE 3 | |
|---|---|
| **Market Date** | **Dr. Juneja's Maximum Alleged Inflation Per Share** |
| 4/1/2010 | $0.00 |
| 11/10/2010 | $0.00 |
| 2/9/2011 | $1.25 |
| 5/3/2011 | $2.86 |
| 5/26/2011 | $0.00 |
| 8/10/2011 | $0.00 |
| 12/27/2011 | $0.00 |
| **Total:[17]** | **$4.11** |

19.     After applying the trading models described earlier (*see* ¶14 above) to Dr.

Juneja's "maximum" inflation per share, there would be 114.5 million damaged shares with

average damages of $2.22, yielding $254 million in aggregate damages (114.5 million shares

multiplied by $2.22).[18] The proposed settlement amount of $97.5 million would represent a

recovery of $0.85 per share under this model, equal to 38.3% of the average damages of $2.22

per share.

20.     Table 4 summarizes the differences in our inflation and damages estimates,

keeping in mind that Defendants would likely have argued for zero damages and zero recovery

per share.

---

[16] Juneja Report at ¶16.

[17] Juneja Report at ¶¶15-16.

[18] There are fewer damaged shares under Dr. Juneja's scenario because she only considers two
corrective disclosures. As a result, many of the shares that were damaged under my inflation
scenario are not damaged under Dr. Juneja's alternative scenario because they are no longer held
over a corrective disclosure. Likewise, the average damages per share is less because the most
damages one could suffer under Dr. Juneja's scenario is $4.11 as opposed to $13.25 based on my
opinion.

9

| Expert | Maximum Per Share Inflation | Damaged Shares Under Coffman Trading Model (millions) | Aggregate Damages Under Coffman Trading Model (millions) | Average Damages Per Share Under Coffman Trading Model | Average Recovery Per Share Under Coffman Trading Model | Recovery Rate Under Coffman Trading Model |
|---|---|---|---|---|---|---|
| | | | TABLE 4 | | | |
| Coffman | $13.25 | 200.5 | $704 | $3.51 | $0.49 | 13.9% |
| Juneja | $4.11 | 114.5 | $254 | $2.22 | $0.85 | 38.3% |

To the extent the finder of fact adopted a subset of Defendants' Expert's arguments, the proposed

settlement would fall between 13.9% and 38.3% recovery rates, respectively.

21.     Over the course of my career, I have been involved in dozens, if not over one

hundred securities class action cases, including matters where I worked for plaintiffs, defendants,

and D&O insurers. As mentioned in earlier, I have also been directly involved in dozens of

negotiations in cases when I have served as a neutral expert for Judge Weinstein in the context of

mediations and arbitrations.

22.     Based on my participation in this litigation and my input to the mediation and

settlement conferences, as well as my past experience in securities matters, I believe that the

process undertaken in this case to evaluate the potential damages upon which the settlement was

negotiated was both extensive and based upon standard methodologies. Moreover, each side's

analysis was subject to substantial scrutiny.

## V.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

23.      I assisted Counsel in the construction of the Plan of Allocation. The Plan of

Allocation generally calculates the "Recognized Loss" that a Class Member can claim for

purposes of receiving a pro rata portion of the Net Settlement Fund. The "Recognized Loss"

calculated under Section L of the Plan of Allocation is consistent with the amount of damages an

10

investor could claim as damages under the methodology presented in my Reply Report,

described above in paragraphs 8 through 12, and which I was prepared to testify to at trial.[19] As a

result, allocating the proposed settlement pro rata on the basis of the Recognized Loss in the Plan

maintains the relative positions that claimants would have had if my damages methodology had

been accepted at trial.[20] Therefore, the Plan represents a fair and reasonable way to allocate the

proposed settlement.


I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on August 7, 2013.


Chad Coffman

---

[19] It also takes into account the statutory cap on damages imposed by the PSLRA.

[20] While not part of my damages analysis, the Plan also limits an investors' Recognized Claim based upon total market loss suffered across all transactions during the Class Period. In my experience, such a provision is a standard feature in plans of allocation and is also fair and reasonable.

11

APPENDIX A

CHAD W. COFFMAN, CFA

Global Economics Group, LLC
140 South Dearborn Street, Suite 1000
Chicago, IL 60603
Office:          (312) 470-6500
Mobile:          (815) 382-0092
Email:           ccoffman@globaleconomicsgroup.com

## EMPLOYMENT:

### Global Economics Group, LLC
President (2008 - Current)

Global Economics Group specializes in the application of economics, finance, statistics, and valuation principles to questions that arise in a variety of contexts, including litigation and policy matters throughout the world. With offices in Chicago, Boston, San Francisco and Atlanta, Principals of Global Economics Group have extensive experience in high-profile securities, antitrust, labor, and intellectual property matters.

### Market Platform Dynamics, LLC
Chief Financial Officer & Chief Operating Officer (2010 – Current)

Market Platform Dynamics is a management consulting firm that specializes in assisting platform-based companies profit from industry disruption caused by the introduction of new technologies, new business models and/or new competitive threats.  MPD's experts include economists, econometricians, product development specialists, strategic marketers and recognized thought leaders who apply cutting-edge research to the practical problems of building and running a profitable business.

### Chicago Partners, LLC
Principal (2007 – 2008)
Vice President (2003 – 2007)
Director (2000 – 2003)
Senior Associate (1999 – 2000)
Associate (1997 – 1999)
Research Analyst (1995 – 1997)

## EDUCATION:

**CFA**   Chartered Financial Analyst, 2003

**M.P.P.**   University of Chicago, 1997
Masters of Public Policy, with a focus in economics including coursework in Finance, Labor Economics, Econometrics, and Regulation

**B.A.**   Knox College, 1995
Economics, Magna Cum Laude
Graduated with College Honors for Paper entitled "Increasing Efficiency in Water
Supply Pricing:  Using Galesburg, Illinois as a Case Study"
Dean's List Every Term
Phi Beta Kappa

## SELECTED EXPERIENCE:

Experience in Securities and Valuation Cases:

- Expert consultant for Citigroup/Salomon Smith Barney in various matters related to Jack
Grubman's analyst coverage of various companies.  This included supporting multiple experts at
high-profile arbitration where plaintiffs claimed $900 million in damages.  Arbitration panel
returned a verdict in favor of client (reported in Wall Street Journal).

- Expert damages consultant in dozens of 10b-5 and Section 11 securities litigation, including, but
not limited to:
    o WorldCom
    o Enron
    o Tyco
    o Parmalat
    o Sears
    o Atlas Air
    o UnumProvident
    o XL Capital
    o Household Finance/HSBC
    o Dynegy
    o Anicom

- Expert consultant in multiple cases involving market timing and/or late-trading.  Developed models
to estimate market timing profits.

- Served as neutral expert for mediator (Judge Daniel Weinstein) in multiple 10(b)-5 securities cases
as well as futures manipulation case.

- Expert consultant for the American Stock Exchange (AMEX) where I evaluated issues related to
multiple listing of options.  Performed econometric analysis of various measures of option spread
using tens of millions of trades.

- Expert consultant to large hedge fund that owned bonds in WorldCom.  Responsible for directing
analysis that led to favorable settlement of their claim in the bankruptcy.

- Performed detailed audit of CDO valuation models employed by a banking institution to satisfy
regulators – non-litigation matter.

- Played significant role in highly-publicized internal accounting investigations of two Fortune 500 companies.  One led to restatement of previously issued financial statements and both involved SEC investigations.

- Testifying expert in the matter of <u>Kuo, Steven Wu v. Xceedium Inc, Supreme Court of New York, County of New York, Index No. 06-100836</u>.  Filed report re: the fair value of Mr. Kuo's shares.  Case settled at trial.

- Testifying expert in the matter of <u>Pallas, Dennis H. v. BPRS/Chestnut Venture Limited Partnership and Gerald Nudo, Circuit Court of Cook County, Illinois, County Department, Chancery Division</u>.  Filed report re: fair value of Pallas shares.  Report: July 9, 2008. Deposition August 6, 2008. Court Testimony February 11, 2009.

- Testifying expert in <u>Washington Mutual Securities Litigation, United States District Court, Western District of Washington, at Seattle, No. 2:08-md-1919 MJP, Lead Case No. C08-387 MJP</u>.  Filed declaration August 5, 2008 re: plaintiffs' loss causation theory.  Filed expert report April 30, 2010.  Filed rebuttal expert report August 4, 2010.

- Testifying expert in <u>DVI Securities Litigation, Case No. 2:03-CV-05336-LDD, United States District Court for the Eastern District of Pennsylvania</u>. Filed expert report October 1, 2008 re: damages. Filed rebuttal expert report December 17, 2008. Deposition January 27, 2009. Filed rebuttal expert report June 24, 2013.

- Testifying expert in <u>Syratech Corporation v. Lifetime Brands, Inc. and Syratech Acquisition Corporation, Supreme Court of the State of New York, Index No. 603568/2007</u>. Filed expert report October 31, 2008.

- Expert declaration in <u>Jacksonville Police and Fire Pension Fund, et al. v. AIG, Inc., et al., No. 08-CV-4772-LTS; James Connolly, et al. v. AIG, Inc., et al., No. 08-CV-5072-LTS; Maine Public Employees Retirement System, et al. v. AIG, Inc., et al., No. 08-CV-5464-LTS; and Ontario Teachers' Pension Plan Board, et al. v. AIG, Inc., et al., No. 08-CV-5560-LTS, United States District Court, Southern District of New York</u>. Filed declaration February 18, 2009.

- Expert declaration in <u>Connetics Securities Litigation, Case No. C 07-02940 SI, United States District Court for the Northern District of California, San Francisco Division</u>. Filed expert report March 16, 2009.

- Testifying expert in <u>Boston Scientific Securities Litigation, Master File No. 1:05-cv-11934 (DPW), United States District Court District of Massachusetts</u>.  Filed expert report August 6, 2009. Deposition October 6, 2009.

- Expert declaration in <u>Louisiana Sheriffs' Pension and Relief Fund, et al. v. Merrill Lynch & Co, Inc., et al., Case Number 08-cv-09063, United States District Court, Southern District of New York</u>. Filed declaration October, 2009.

- Testifying expert in <u>Henry J. Wojtunik v. Joseph P. Kealy, John F. Kealy, Jerry A. Kleven, Richard J. Seminoff, John P. Stephen, C. James Jensen, John P. Morbeck, Terry W. Beiriger, and Anthony T. Baumann</u>. Filed expert report on January 25, 2010.

- Testifying expert in <u>REFCO Inc. Securities Litigation, Case No. 05 Civ. 8626 (GEL), United States District Court for the Southern District of New York</u>. Filed expert report February 2, 2010. Filed rebuttal expert report March 12, 2010. Deposition March 26, 2010.

- Expert declaration in <u>New Century Securities Litigation, Case No. 07-cv-00931-DDP, United States District Court Central District of California</u>. Filed declaration March 11, 2010.

- Testifying expert in <u>Louisiana Municipal Police Employees' Retirement System, et. al. v. Tilman J. Fertitta, Steven L. Scheinthal, Kenneth Brimmer, Michael S. Chadwick, Michael Richmond, Joe Max Taylor, Fertitta Holdings, Inc., Fertitta Acquisition Co., Richard Liem, Fertitta Group, Inc. and Fertitta Merger Co, C.A. No. 4339-VCL, Court of Chancery of the State of Delaware</u>. Filed expert report April 23, 2010.

- Testifying expert in <u>Edward E. Graham and William C. Nordlund, individually and d/b/a Silver King Capital Management v. Eton Park Capital Management, L.P., Eton Park Associates, L.P. and Eton Park Fund, L.P. Case No. 1:07-CV-8375-GBD, Circuit Court of Shelby County, Alabama</u>. Filed rebuttal expert report July 8, 2010.  Deposition September 1, 2010. Filed supplemental rebuttal expert report August 22, 2011.

- Testifying expert in <u>Moody's Corporation Securities Litigation. Case No. 1:07-CV-8375-GBD), United States District Court for the Southern District of New York</u>.  Filed rebuttal expert report August 23, 2010. Deposition October 7, 2010. Filed rebuttal reply report November 5, 2010. Filed expert report May 25, 2012.

- Testifying expert in <u>Minneapolis Firefighters' Relief Association v. Medtronic, Inc., et al. Civil No. 08-6324 (PAM/AJB), United States District Court, District of Minnesota</u>. Filed expert report January 14, 2011.

- Testifying expert in <u>Schering-Plough Corporation/ENHANCE Securities Litigation Case No.2:08-cv-00397 (DMC) (JAD), United States District Court, District of New Jersey</u>. Filed declaration February 7, 2011. Filed expert report September 15, 2011. Filed rebuttal expert report October 28, 2011. Filed declaration January 30, 2012. Deposition November 15, 2011 and November 29, 2011.

- Testifying expert in <u>Fannie Mae 2008 Securities Litigation, Master File No. 08 Civ. 7831 (PAC), United States District Court for the Southern District of New York</u>. Filed expert report July 18, 2011.

- Testifying expert in <u>Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation, Master File No. 09 MDL 2058 (PKC), United States District Court for the Southern District of New York</u>.  Filed expert report August 29, 2011. Filed rebuttal expert report September 26, 2011. Filed expert report March 16, 2012. Filed rebuttal expert report April 9, 2012. Filed rebuttal expert report April 29, 2012. Deposition October 14, 2011 and May 24, 2012.

- Testifying expert in <u>Toyota Motor Corporation Securities Litigation, Case No. 10-922 DSF (AJWx), United States District Court, Central District of California</u>. Filed expert report February 17, 2012. Deposition March 28, 2012. Filed rebuttal expert report August 2, 2012. Filed declaration re: Plan of Allocation, January 28, 2013.

- Testifying expert in <u>The West Virginia Investment Management Board and the West Virginia Consolidated Public Retirement Board v. The Variable Annuity Life Insurance Company, Civil No. 09-C-2104, Circuit Court of Kanawha County, West Virginia</u>. Filed expert report June 1, 2012. Deposition June 19, 2013.

- Testifying expert in <u>Aracruz Celulose S.A. Securities Litigation, Case No. 08-23317-CIV-LENARD, United States District Court, Southern District of Florida</u>. Filed expert report July 20, 2012. Deposition September 14, 2012. Filed rebuttal expert report October 29, 2012. Filed declaration re: Plan of Allocation, May 20, 2013.

- Testifying expert in <u>In Re Computer Sciences Corporation Securities Litigation, CIV. A. No. 1:11-cv-610-TSE-IDD, United States District Court, Eastern District of Virginia, Alexandria Division</u>. Filed expert report November 9, 2012. Filed supplemental report February 18, 2013. Filed rebuttal expert report March 25, 2013. Deposition March 27, 2013.

- Testifying expert in <u>In Re Weatherford International Securities Litigation, Case 1:11-cv-01646-LAK, United States District Court for the Southern District of New York</u>. Filed expert report April 1, 2013. Deposition April 26, 2013.

- Testifying expert in <u>In Re: Regions Morgan Keegan Closed-End Fund Litigation, Case 2:07-cv-02830-SHM-dkv, United States District Court for the Western District of Tennessee Western Division</u>. Court testimony April 12, 2013.

- Testifying expert in <u>City of Roseville Employees' Retirement System and Southeastern Pennsylvania Transportation Authority, derivatively on behalf of Oracle Corporation, Plaintiff, v. Lawrence J. Ellison, Jeffrey S. Berg, H. Raymond Bingham, Michael J. Boskin, Safra A. Catz, Bruce R. Chizen, George H. Conrades, Hector Garcia-Molina, Donald L. Lucas, and Naomi O. Seligman, Defendants, and Oracle Corporation, Nominal Defendant, C.A. No. 6900-CS, Court of Chancery of the State of Delaware</u>. Filed expert report May 13, 2013. Filed rebuttal expert report June 21, 2013. Deposition July 17, 2013.

- Testifying expert in <u>In Re BP plc Securities Litigation, No. 4:10-md-02185, Honorable Keith P. Ellison, United States District Court for the Southern District of Texas, Houston Division</u>. Filed expert report June 14, 2013. Deposition July 25, 2013.

- Testifying expert in <u>In Re Celestica Inc. Securities Litigation, Civil Action No. 07-CV-00312-GBD, United States District Court for the Southern District of New York</u>. Filed expert report June 14, 2013.

- Testifying expert in <u>In Re Dendreon Corporation Class Action Litigation, Master Docket No. C11-01291JLR, United States District Court for the Western District of Washington at Seattle</u>. Filed declaration re: Plan of Allocation, June 14, 2013.

<u>Experience in Labor Economics and Discrimination-Related Cases:</u>

- Expert consultant for Cargill in class action race discrimination matter in which class certification was defeated.

- Expert consultant for 3M in class action age discrimination matter.

- Expert consultant for Wal-Mart in class action race discrimination matter.

- Expert consultant for Novartis regarding various labor related issues.

- Expert consultant on various other significant confidential labor economics matters in which there were class action allegations related to race and gender.

- Expert consultant for large insurance company related to litigation and potential regulation resulting from the use of credit scores in the insurance underwriting process.

- Testifying expert in <u>Shirley Cohens v. William Henderson, Postmaster General, C.A 1:00CV-1834 (TFH) United States Postal Service. United States District Court for the District of Columbia.</u>– Filed report re: lost wages and benefits.

- Testifying expert in <u>Richard Akins v. NCR Corporation</u>.  Before the American Arbitration Association – Filed report re: lost wages.

- Testifying expert in <u>Maureen Moriarty v. Dyson, Inc., Case No. 09 CV 2777, United States District Court for the Northern District of Illinois, Eastern Division</u>. Filed expert report October 12, 2011. Deposition November 10, 2011.

<u>Selected Experience in Antitrust, General Damages, and Other Matters:</u>

- Expert consultant in high-profile antitrust matters in the computer and credit card industries.

- Expert consultant for plaintiffs in re: Brand Name Drugs Litigation.  Responsible for managing, maintaining and analyzing data totaling over one billion records in one of the largest antitrust cases ever filed in the Federal Courts.

- Served as neutral expert for mediator (Judge Daniel Weinstein) in allocating a settlement in an antitrust matter.

- Expert consultant in Seminole County and Martin County absentee ballot litigation during disputed presidential election of 2000.

- Expert consultant for sub-prime lending institution to determine effect of alternative loan amortization and late fee policies on over 20,000 customers of a sub-prime lending institution. Case settled favorably at trial immediately after the testifying expert presented an analysis I developed showing fundamental flaws in opposing experts calculations.


**TEACHING EXPERIENCE:**

        KNOX COLLEGE, Teaching Assistant - Statistics, (1995)
        KNOX COLLEGE, Tutor in Mathematics, (1992 - 1993)

**PUBLICATIONS:**

Coffman, Chad and Mary Gregson, "Railroad Construction and Land Value." *Journal of Real Estate and Finance*, 16:2, pp. 191-204 (1998).

Coffman, Chad, Tara O'Neil, and Brian Starr, Ed. Richard D. Kahlenberg, "An Empirical Analysis of the Impact of Legacy Preferences on Alumni Giving at Top Universities," *Affirmative Action for the Rich: Legacy Preferences in College Admissions*; pp. 101-121 (2010).

**PROFESSIONAL AFFILIATIONS:**

Associate Member CFA Society of Chicago
Associate Member CFA Institute
Phi Beta Kappa

**AWARDS:**

1994  Ford Fellowship Recipient for Summer Research.
1993  Arnold Prize for Best Research Proposal.
1995  Knox College Economics Department Award.

**PERSONAL ACTIVITIES:**

Pro bono consulting for Cook County State's Attorney's Office.
Pro bono consulting for Cook County Health & Hospitals System – Developed method for hospital to assess real-time patient level costs to assist in improving care for Cook County residents and prepare for implementation of Affordable Care Act.